**Linwood FIELDS, Appellant,**

v.

**Patrick KEOHANE, Federal Bureau of Prisons Attorney General, of the United States.**

**Wardell HILLARD; Charles R. James–Bey; Andre Springs, Appellants,**

v.

**Patrick W. KEOHANE.**

**Nos. 90–5088, 90–5173.**

United States Court of Appeals, Third Circuit.

Argued and Submitted under Third Circuit Rule 12(6)
Aug. 15, 1990.

Decided Jan. 28, 1992.

946

Linwood Fields, pro se in No. 90–5088.

James J. West, U.S. Atty., Martin C. Carlson, Asst. U.S. Atty., Harrisburg, Pa., for appellee in No. 90–5088.

Louise O. Knight (argued), Clement & Knight, On Behalf of Lewisburg Prison Project, Lewisburg, Pa., Robert C. Hauhart, Prisoners' Rights Program, Lorton, Va., for appellants in No. 90–5173.

James J. West, U.S. Atty., Frederick E. Martin (argued), Asst. U.S. Atty., Lewisburg, Pa., for appellee in No. 90–5173.

Before MANSMANN, GREENBERG, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I.  BACKGROUND

Appellants Wardell Hillard, Charles R. James–Bey, and Andre Springs, appeal from an order of the district court entered on December 21, 1989, denying their joint petition for habeas corpus filed pursuant to 28 U.S.C. § 2241, and appellant Linwood Fields separately appeals from an order of the district court entered on December 8, 1989, denying his separate petition for habeas corpus also filed pursuant to 28 U.S.C. § 2241.  On July 16, 1990, we entered an order approving a stipulation consolidating the appeals.[1]  The appellants' principal contention is that there is a constitutional requirement that the District of Columbia Good Time Credits Act of 1986, though by its terms largely limited to prisoners retained in a District facility, be applied to prisoners like themselves who were convicted of offenses under District law in the

---

1.  We held the appeals in abeyance pending completion of litigation in the United States Court of Appeals for the District of Columbia Circuit which we believed might be of assistance to us in deciding this case.  It has quite recently come to our attention that the cases have been completed in that court, but the dispositions have not been of precedential help to us.

Superior Court of the District of Columbia but serve their custodial sentences in the federal prison system. The claim can arise because the District of Columbia Code provides that a prisoner convicted of a District offense is committed to the custody of the Attorney General of the United States for service of sentence in a facility, designated by the Attorney General, whether maintained by the United States, the District, or otherwise, within or without the District. D.C.Code Ann. § 24–425.

The basic facts of the cases are not in question. The appellants, all convicted of violent criminal offenses under District law, were sentenced in the Superior Court of the District of Columbia under the District of Columbia Code as follows: (1) on November 19, 1984, Hillard was sentenced to an aggregate term of 20 years to life imprisonment; (2) on April 20, 1983, James–Bey was sentenced to an aggregate term of 32 years to 96 years imprisonment; (3) on October 18, 1978, Springs was sentenced to an aggregate term of 18 years and two months to 56 years and six months; and (4) on August 26, 1977, Fields was sentenced to an aggregate term of 15 years to life imprisonment. The Attorney General has provided for their confinement at the United States Penitentiary at Lewisburg, Pennsylvania, rather than at a District of Columbia facility.

Their confinement at Lewisburg has had a significant effect on the appellants' potential parole eligibility for, as federal prisoners, they are subject to the federal good time credits system rather than that under the Good Time Credits Act.[2] The United States Court of Appeals for the Fourth Circuit in *Moss v. Clark*, 886 F.2d 686 (4th Cir.1989), explained the difference as follows:

The District and federal good time systems differ in significant respects. Under the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory re-

lease date forward, but does not affect the minimum term required to be served before an inmate becomes eligible for parole. 18 U.S.C. § 4161 (1982). Under the District scheme, good time credits are applied to reduce the minimum term of imprisonment, which determines the date of parole eligibility, as well as to reduce the maximum term of imprisonment, which determines mandatory release. D.C.Code § 24–428(b).

Under the federal system, the Bureau of Prisons awards 'good conduct' credits of five to ten days per month, based on the length of the sentence, to those prisoners who demonstrate good behavior. 18 U.S.C. § 4161. The amount is not awarded automatically at the beginning of a sentence, but credited monthly as earned. Under the District system, an inmate incarcerated in a District correctional facility is automatically entitled to a maximum of 10 days institutional good time per month. D.C.Code § 24–428(a). The credits cannot be revoked without a hearing. D.C.Code § 24–432 (1989 Replacement Vol.). In addition to these automatic good conduct credits, extra good time credits are available under both systems, but with some variations. *See,* 18 U.S.C. § 4162; 28 C.F.R. §§ 523.1–523.-17; D.C.Code § 24–429 (1989 Replacement Vol.). Although the parties disagreed over the exact number of days involved in available credits under the federal versus the District good time systems, the district court found a significant difference in the opportunity to reduce petitioners' sentences under the two schemes. For example, under the federal system, the earliest parole date for petitioner Moss would be April 1994. If awarded credits under the District scheme, Moss would face a parole eligibility date of either January 1991 or June 1992. *Moss [v. Clark],* 698 F.Supp. [640] at 646 [ (E.D.Va.1988) ].

---

2. The Good Time Credits Act, at D.C.Code Ann. § 24–428(a), provides that every "person who is convicted of a violation of a District of Columbia ... criminal law by a court in the District of

Columbia, *imprisoned in a District correctional facility ...*" may earn institutional good time credits. (Emphasis added.)

*Id.* at 688–89 (footnote omitted).[3]

The appellants have supplied a detailed explanation of their eligibility for good time credits. Thus, in their joint brief Hillard, James–Bey and Springs make the following assertions:

> Application of the federal good time credits statutes to Appellant Hillard reveals that for his sentence from 20 years to life he must serve 20 years before he is eligible for parole. D.C. Code §§ 24–428 and 429 would have reduced his minimum by almost 50% or 10 years, making him eligible for parole in 1995 instead of January 30, 2005. Appellant James–Bey's sentence of from 32 years to 96 years requires that he serve 32 years before he is parole eligible under the federal system. Under the D.C.Code, he would enjoy reduction of his minimum by almost 50% to 16 years, making him eligible for parole in 1999 instead of March 30, 2015. Similarly, Appellant Springs' sentence of from 18 years 2 months to 56 years 6 months under the federal system requires him to serve 18 years and 2 months before he is parole eligible. By comparison, D.C.Code §§ 24–428 and 429 would reduce his minimum by almost 50% or by 9 years and 1 month, making him eligible for parole immediately instead of on May 18, 1997.

Brief at 8.

The appellee, though not stating his specific agreement with these calculations, does not dispute them. In any event, even if the calculations are not accurate, the appellee does not contend that the appellants are not eligible for parole earlier under the District system than under the federal system.

Fields contends that, under the federal system, he is obliged to serve 15 years from when he was sentenced, *i.e.,* until August 26, 1992, to be eligible for parole, whereas under the District of Columbia system his minimum would be reduced "by almost 50% or 8 years, making [him] eligible for parole in 1985," thus permitting his immediate release. Brief at iii. The appellee does not contend that Fields's calculations are incorrect.

The appellants assert that the Good Time Credits Act denies them equal protection of the laws and due process of law under the Fifth Amendment, because its failure to extend the liberal good time credits computation under the Act to District prisoners confined in a federal facility is not rationally related to a legitimate "state" interest and because there are no objective, rational and ascertainable standards to determine which District prisoners are sent to federal prisons.[4] They further contend that they have a "liberty interest" in receiving the benefits of the Good Time Credits Act and in their place of confinement within a District facility and that this liberty interest was taken from them in violation of due process of law protections by their assignment to Lewisburg. The appellee responds that it is constitutional to limit the application of the Good Time Credits Act to prisoners in District facilities, as the District of Columbia Council enacted the Good Time Credits Act to address an overcrowding problem in its own facilities. The appellee further urges that the appellants do not have a liberty interest for due process purposes because the Good Time Credits Act only provides for credits for prisoners within a District facility and the District Code expressly permits the Attorney General to transfer district prisoners to a federal institution.

---

3. We are not concerned with the precise application of the federal good time credits but we point out that 18 U.S.C. § 4161, cited by the *Moss* court, has been repealed, though it is effective as to the appellants until November 1, 1992. *See Moss v. Clark,* 886 F.2d at 689 n. 3. It appears that after that date, 18 U.S.C. § 3624(b) may be applicable to them but may be of no practical consequence if the federal good time comes off the maximum district sentence. Of course, federal sentences are determinate, unlike the indeterminate district sentences involved here.

4. The Fifth rather than the Fourteenth Amendment is directly implicated in a due process and equal protection case involving a District of Columbia statute. But it is well established that the Fifth Amendment includes the concept of equal protection of the laws under the Fourteenth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

## II. ANALYSIS

■ It is important at the outset of our analysis to emphasize that this appeal involves habeas corpus proceedings brought by the appellants and thus they can only challenge the bases on which they are held in custody. *See Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (on habeas a federal court does not review a judgment; rather it reviews "the lawfulness of the petitioner's custody *simpliciter*"). It therefore follows that unless resolution of the constitutional issues raised by the appellants in their favor can affect the length of their custodial terms, there is no point in addressing the issues. At bottom, of course, the appellants complain that their equal protection and due process rights have been infringed because they are treated differently than District prisoners assigned to a District facility. Thus, if the Good Time Credits Act is not applied to *any* person convicted of a crime in the Superior Court of the District of Columbia, regardless of that person's place of confinement, the appellants would not even have a colorable basis to complain that the District good time credits computed under the Act should be applied to them or that they should not have been transferred to Lewisburg. Accordingly, the appellants implicitly assume that acceptance of their constitutional contentions will result in the Good Time Credits Act being applied to them rather than the Act simply being invalidated.

The difficulty with the appellants' position is that the District of Columbia Council expressly declined to provide that the Good Time Credits Act would be applied to District prisoners placed by the Attorney General in a federal facility, and when the council adopted the Act it did not limit the long-established power of the Attorney General provided in D.C.Code Ann. § 24–425 to transfer prisoners to federal institutions. Rather, the Good Time Credits Act expressly limits the award of institutional

good time to prisoners "imprisoned in a District correctional facility." D.C.Code Ann. § 24–428.[5] This limitation was hardly inadvertent as the District of Columbia Council was well aware that district prisoners are sometimes confined in federal facilities, as expressly authorized by the District of Columbia Code.

The report of the chairperson of the council's Committee on the Judiciary of November 12, 1986, accompanying the then proposed Good Time Credits Act, makes it perfectly clear why the Act was adopted. The committee recognized that under prior law, good time credits were "applied exclusively to the maximum sentence." App. at 25. Thus, the committee realized that "[s]ince almost all inmates are released prior to serving their maximum term, good time credits have little impact on an inmates [*sic*] release date." The Good Time Credits Act changed that system so that the credits reduced both the minimum and maximum terms of imprisonment.

Of course, the motive for enactment of the Good Time Credits Act is obvious. The District prison facilities have been overcrowded for many years. *See United States v. District of Columbia,* 703 F.Supp. 982, 985 (D.D.C.1988), *mod. and aff'd,* 897 F.2d 1152 (D.C.Cir.1990). Accordingly, the November 12, 1986, report at its outset indicated that "[t]he District of Columbia is faced with an unprecedented overcrowding problem in its correctional institutions." App. at 25. Furthermore, the report recognized that there was a possibility that the United States District Court might appoint an independent special master to monitor compliance with court orders which had been entered establishing inmate population caps. Therefore the District appointed officers itself to suggest methods to comply with the court orders and the Good Time Credits Act was a fruit of that process. In the circumstances, there can be no reasonable doubt that the primary reason for the enactment of the

---

5. The Good Time Credits Act also provides for educational good time credits, though in a lesser amount than the institutional good time credits provided in D.C.Code Ann. § 24–428. While the Act does not explicitly limit the award of edu-

cation good time credits to prisoners within a District facility, in fact they are not awarded to prisoners in a federal facility and the lack of a specific limitation in the Act does not affect our result. *See* D.C.Code Ann. § 24–429.

Good Time Credits Act was to facilitate the early release of District prisoners *from District facilities.*

Indeed the November 12, 1986, report indicates that at a roundtable discussion a representative of the American Civil Liberties Union of the National Capital Area, who testified in support of the Good Time Credits Act, suggested that it "should be amended to state that good time credits should apply to D.C. prisoners in the federal system." App. at 28. But no such amendment was adopted. *See Moss v. Clark,* 886 F.2d at 690–91. Accordingly, if we granted relief to the appellants by effectively deleting the words "imprisoned in a District correctional facility" from provisions of the Good Time Credits Act providing for institutional good time credits for persons who are convicted of offenses under District of Columbia law, we would be allowing good time credits to be awarded in a way the District of Columbia Council rejected. This we cannot do, for a court may not "invalidate a part of a statute on constitutional grounds and leave the rest in effect if the result is to create a law that the legislature would not have enacted." *Bethlehem Steel Corp. v. Gorsuch,* 742 F.2d 1028, 1036 (7th Cir.1984) (citing *Norman's on the Waterfront, Inc. v. Wheatley,* 444 F.2d 1011, 1019 (3d Cir.1971)).

Therefore, the length of the appellants' custodial terms cannot be affected if we invalidate the Good Time Credits Act. Quite to the contrary, the only possible consequence which could follow from such an invalidation is that the Good Time Credits Act could not be applied to any prisoner convicted of a District offense no matter where confined.[6] Thus, we can decide this case without reaching the merits of the appellants' equal protection and due process arguments which they predicate on the differing treatment of federal and District prisoners, for even if the appellants are substantively correct, they cannot be

granted relief in this habeas case in which only *their* custody is at stake.[7]

We recognize that it might be argued that, notwithstanding the express provisions of D.C.Code Ann. § 24–428 limiting the award of institutional good time credits to prisoners in a District facility and, further, notwithstanding the District's failure to adopt the suggestion that the section be expanded to prisoners in federal facilities, faced with an all-or-nothing choice, the District of Columbia Council would apply the Good Time Credits Act to any person wherever confined who violates the District Code. The conceivable basis for this argument would be that the District would acquiesce in this application to avoid further crowding of its own facilities.

But we reject this possibility. The District, after all, is not in the position of a state, as there is a "unique division of authority and responsibility ... between the [District] and federal governments" in the prison context. *United States v. District of Columbia,* 897 F.2d 1152, 1153 (D.C.Cir.1990). Thus, while the District may not refuse to accept prisoners assigned to it by the Attorney General, this obligation is subject to the limitation that the District need not accept prisoners if doing so will cause it to violate court-ordered population caps. *Id.* at 1156. Therefore the District, unlike a state, has a safety valve so that provision may be made for confinement of all defendants convicted in its courts regardless of how crowded its own facilities may be. Thus, while elimination of the credits under the Good Time Credits Act would undoubtedly put further pressure on the District penal system, the pressure could be relieved by an overflow to the federal system. *Id.* at 1155. Indeed, as recognized by the Court of Appeals for the District of Columbia Circuit in *Jackson v. Thornburgh,* 907 F.2d 194 (D.C.Cir.1990), "federal authorities will ac-

---

6. We say "possible" because we have no need to determine what the actual consequence would be to prisoners in a District facility if we invalidated the Good Time Credits Act.

7. This is so whether D.C.Code Ann. § 24–428 is considered singularly or, as the appellants urge, in tandem with D.C.Code Ann. § 24–425, which deals with the placement of prisoners.

cept a District prisoner only to avert District violation of its caps." *Id.* at 199.[8]

█ While we have indicated that it is unnecessary to reach the substantive equal protection issue and due process arguments raised by appellants' contention that the Good Time Credits Act must be applied to them, we also predicate our decision on the alternative ground that the appellants' constitutional arguments are not meritorious. In this regard we simply state that we are in substantial agreement with *Pryor v. Brennan,* 914 F.2d 921 (7th Cir. 1990), and *Moss v. Clark,* 886 F.2d 686, which rejected attacks by prisoners in federal institutions in other circuits on the limitation of the Good Time Credits Act to prisoners retained in District facilities. *See also Jackson v. Thornburgh,* 907 F.2d 194.

Finally we realize that conceptually the appellants could be granted relief on the basis of their challenge to their transfers even if equal protection and due process of law do not require that the Good Time Credits Act be applied to them while confined at Lewisburg. Thus, the appellants contend that, in the absence of rational, objective and ascertainable standards in the District Code or elsewhere, that govern the determination of when assignments are to be made to a federal facility, their assignments to Lewisburg were unlawful because of the significant consequences attributable to the federal confinement. An argument along these lines was not made by the petitioners in all the other cases rejecting claims under the Good Time Credits Act for federal prisoners. *See Pryor v. Brennan,* 914 F.2d at 927 n. 9. But this argument suffers from the basic problem that there

*are* standards in D.C.Code Ann. § 24–425, as it provides that the place of confinement must be "available, suitable, and appropriate" and that prisoners can be transferred from one institution to another "for the well-being of the prisoner or [to] relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons." *See United States v. District of Columbia,* 703 F.Supp. at 993. In any event, we are satisfied that, contrary to their contentions, the appellants have no liberty interests subject to due process protection that could be infringed by their assignments to federal institutions. *See Pryor v. Brennan,* 914 F.2d at 927; *Moss v. Clark,* 886 F.2d at 692.[9]

The orders of the district court of December 21, 1989, and December 8, 1989, will be affirmed.

---

**8.** There is an additional reason to believe that the District of Columbia Council would not want the Good Time Credits Act applied to federal prisoners if faced with an all-or-nothing choice. There is simply no escape from the reality that if credits are awarded under the Good Time Credits Act to persons sentenced before its adoption, such as the appellants, the award will produce a shorter period for parole eligibility than the judge imposing an indeterminate sentence intended. Indeed, the appellants assert that the application of the Good Time Credits Act to them will shorten their parole eligibility dates by nearly 50%. We think that the council, confronted with a serious

crime problem, would not want to frustrate the sentencing court's understanding as to parole eligibility more than necessary in order to relieve pressure on the District penal system.

**9.** It should be noted that there is an indication in *Jackson v. Thornburgh,* 907 F.2d at 201–02 (dissenting opinion), that District prisoners are placed in federal facilities if in need of special treatment or on crisis occasions. Obviously, there would be nothing irrational in that. We acknowledge, however, that we do not know exactly why the appellants were sent to Lewisburg.