

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-1996

# Morel v. INS

Precedential or Non-Precedential:

Docket 95-3271

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Morel v. INS" (1996). *1996 Decisions.* Paper 116.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 95-3271


ELEAZAR MOREL,
                              Petitioner

                    v.

        IMMIGRATION AND NATURALIZATION SERVICE,
                              Respondent


        On Petition for Review of an Order of the
              Board of Immigration Appeals
                 (INS No. A42-267-305)


              Argued March 25, 1996

        Before:  SLOVITER, Chief Judge, GREENBERG and
                    ROTH, Circuit Judges

            (Opinion filed July 26, 1996)

Robert Frank (Argued)
Newark, NJ  07102
        Attorney for Petitioner

Frank W. Hunger
  Assistant Attorney General
  Civil Division
David M. McConnell
  Senior Litigation Counsel
Vernon Ben,t Miles (Argued)
Donald E. Keener
Joan E. Smiley
Office of Immigration Litigation
Department of Justice
Washington, DC  20044

        Attorneys for Respondent
                    OPINION OF THE COURT


SLOVITER, Chief Judge.

        Eleazar Morel petitions for review of the decision of

the Board of Immigration Appeals (BIA) because he was declared ineligible to apply for relief from deportation under section 212(c) of the Immigration and Nationality Act (INA). Our review requires that we consider two legal issues, neither of which this circuit has previously addressed: whether the INS erred in imposing a requirement of seven consecutive years' domicile after the alien was admitted to the United States as a lawful permanent resident and whether the domicile of a parent may be imputed to his or her child in appropriate cases for purposes of meeting the seven-year domicile requirement.

## I.

Morel is a native and citizen of the Dominican Republic, born there on June 13, 1972. He was admitted to the United States as a lawful permanent resident on December 20, 1989 when he was seventeen years old. He resided in Paterson, New Jersey with his mother, who had preceded him to this country by approximately four years.

Morel was arrested on August 24, 1991, and later pled guilty to possession of cocaine, rendering him deportable under 8 U.S.C. 1251(a)(2)(B)(i). The Order to Show Cause issued by the Immigration and Naturalization Service (INS) states, and the immigration judge (IJ) found, that Morel was also convicted of "employing a juvenile in a drug distribution scheme," App. at 48, 13, an offense which would be classified as an "aggravated felony" for purposes of the immigration laws, see 8 U.S.C. 1101(a)(43). However, the state court record is to the contrary. The Judgment of Conviction issued by the New Jersey Superior Court states that Morel was convicted only of one count of possession of a controlled dangerous substance, and that the other offense with which Morel was originally charged, possession of a controlled dangerous substance within 1,000 feet of school property, was dismissed. App. at 37.

After serving his sentence in New Jersey, Morel was transferred to an INS detention facility in Oakdale, Louisiana, where the INS initiated deportation proceedings. At a hearing held on January 17, 1994, Morel requested relief from deportation pursuant to section 212(c) of the INA, 8 U.S.C. 1182(c). The immigration judge denied Morel's request on the ground that he did not meet the requirements of section 212(c), and ordered him deported to the Dominican Republic. App. at 24. On April 10, 1995, the BIA affirmed the order and dismissed Morel's appeal. Morel filed his petition for review to this court on May 11, 1995.

We have plenary review over questions of law, but must defer to an agency's reasonable construction of ambiguities in the statutes it is charged with administering. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45 & n.11 (1984); Katsis v. INS, 997 F.2d 1067, 1069-70 (3d Cir. 1993), cert. denied, 114 S.Ct. 902 (1944). We will uphold the agency's findings of fact to the extent that they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. 1105a(a)(4); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

II.

We must first consider a matter of this court's jurisdiction, an issue over which we have plenary review. Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 834 (3d Cir. 1995). The INS initially filed a motion to dismiss the petition for review on the ground that Morel filed his petition one day late. A motions panel of this court referred the matter to the merits panel. However, in the brief the INS subsequently filed with us on the merits of the petition for review, it conceded that the appeal was timely. See Appellee's Brief at 1 ("The petition for review was filed on May 11, 1995, and therefore is timely under Section 106(a)(1) of the INA, 8 U.S.C. 1105a(a)(1)").

The time for filing a petition for review differs, depending on whether the petitioner was convicted of an aggravated felony or a lesser offense. See 8 U.S.C. 1105a(a)(1) ("[A] petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order, or, in the case of an alien convicted of an aggravated felony . . . , not later than 30 days after the issuance of such order."). Thus, had Morel been convicted of an "aggravated felony," we would indeed lack jurisdiction to consider this appeal because Morel did not file his petition for review within thirty days, as required in the case of an aggravated felony. Although at his deportation hearing Morel's attorney answered "yes" to the immigration judge's question "do you admit [the] allegations [of the Order to Show Cause] on behalf of your client?" and those allegations included the conviction on both charges, see App. at 27, 48, Morel now argues that because the only crime of which he was convicted, drug possession, is not an aggravated felony under the INA, the 90-day time limit governs and his petition for review was timely filed.

In response to an inquiry from this court following oral argument, the INS once again reversed its position on the issue of our jurisdiction. It now insists that Morel's appeal is untimely, and that he is estopped from asserting that he was not convicted of an aggravated felony because he conceded this point at his deportation hearing. We are not persuaded that this is an appropriate case for estoppel.

Because Morel would have been deportable for possession of a controlled substance, there was no reason for Morel to have focused on whether he had also been convicted of any other charge at the deportation hearing. Morel could not then have anticipated that conviction of an aggravated felony would later become relevant to the timeliness of his petition to this court. Therefore, we will not now estop him from arguing that he was not convicted of an aggravated felony. See Restatement (Second) of Judgments 27, 28(2)(a) & (5)(b)(1980) (issue preclusion successfully invoked only when issue was actually litigated and essential to previous judgment, and not when issue's reappearance involves substantially unrelated claim or was not sufficiently foreseeable).

The judgment of conviction in Morel's criminal case

clearly shows that he was convicted only of drug possession, seeApp. at 37, and the government does not argue otherwise. That offense is not an aggravated felony under the immigration laws. To the extent the IJ should be viewed as having made a factual finding that Morel was convicted of an aggravated felony, that finding was not supported by substantial evidence. It follows that Morel had 90 days within which to file his notice of appeal under 8 U.S.C. 1105a(a)(1), and accordingly his appeal is timely.

The INS does not dispute that venue is proper in this court, although this is an appeal from the BIA in Louisiana. Under the applicable statute, a petitioner may seek judicial review in either the circuit in which the hearing took place or the circuit of his residence. 8 U.S.C. 1105a(a)(2). Morel's residence prior to his arrest was in Paterson, New Jersey, and apparently he returned to his home in New Jersey following his release from INS custody.

The INS nonetheless suggests that this court should review the reasonableness of the BIA's decision in light of Fifth Circuit law, because that was the jurisdiction in which the case arose. While it may be anomalous that there could be differing circuit law governing a federal agency's application of a uniformly applicable federal statute where two circuits have potential connection with the case, all of the other appellate courts confronted with a similar situation have applied the law of their own circuits. See Rosendo–Ramirez v. INS, 32 F.3d 1085, 1091–94 (7th Cir. 1994)(holding court was obliged to apply its own law despite problems created by lack of uniformity in application of immigration laws); Maldonado–Cruz v. Dept. of Imm. & Naturalization, 883 F.2d 788, 790–91 (9th Cir. 1989)(applying Ninth Circuit law where alien's detention and hearings occurred in Fifth Circuit based on "the general policy of preventing forum shopping by the INS" and fact that alien's only contact with Fifth Circuit was his detention there). We will likewise apply the law of our own jurisdiction.

III.
A.

At issue in this appeal is whether the BIA erred in determining that Morel was ineligible for a waiver of inadmissibility under section 212(c) of the INA. Section 212(a) identifies those classes of aliens who are ineligible to receive visas and are excluded from admission to the United States. Section 212(c), however, authorizes the Attorney General to waive the restrictions of section 212(a) where an alien satisfies certain conditions. That section provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .

8 U.S.C. 1182(c).

We note in passing that the language of section 212(c) appears on its face to apply only to aliens who seek to re-enter the country.  Nonetheless, the provision has been uniformly extended to apply to deportation proceedings as well.  SeeKatsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993), cert. denied, 114 S.Ct. 902 (1994); Tapia-Awna v. INS, 640 F.2d 223, 224-25 (9th Cir. 1981); Francis v. INS, 532 F.2d 268, 271-73 (2d Cir. 1976); Matter of Silva, 16 I & N Dec. 26, 30 (BIA 1976).  Even if we were inclined to reconsider this issue, we are bound by our previous determination in Katsis that we would follow the uniform construction.  Moreover, we note that the INS does not now dispute the applicability of section 212(c) to deportation proceedings, and thus this issue is not before us.  Instead, we turn to Morel's challenge to the BIA's ruling.

B.

Morel's argument is twofold.  First, he contends that the BIA has erroneously interpreted section 212(c) to require seven years of domicile subsequent to admission as a lawful permanent resident, a requirement Morel maintains is not imposed by the statute.  Second, although Morel concedes that he had not resided in this country for seven consecutive years at the time of his deportation hearing, he contends that the domicile of his mother, who he claims became a permanent resident on May 27, 1985, should be attributed to him for the period before he joined her in 1989.  He bases the latter argument on the accepted common-law principle that a minor child's domicile is that of his or her parent.

The IJ recognized that Morel claimed the requisite domicile based on his mother's permanent resident status, but held that "the respondent is not eligible for the relief in this Circuit or in this Court of 212(c) waiver based upon his mother's date of the issuance of the green card.  Therefore, it has not [sic] choice."  App. at 24.  The BIA affirmed the IJ's decision and dismissed the appeal in a per curiam opinion.  The BIA noted that the Fifth Circuit had not addressed the imputation-of-domicile issue, and expressly declined to apply the reasoning of the other courts which had imputed the domicile of a parent to the parent's minor child for purposes of determining whether the child had satisfied the seven-year domicile requirement of section 212(c).  App. at 3 n.1.  Of course, the possibility of imputing a parent's domicile to his or her child will ordinarily be relevant only if the BIA erred in its reading of section 212(c) as requiring seven years of permanent residency status.  Thus, we turn to the latter issue first.

C.

While the BIA has long held that the seven years of domicile required by section 212(c) must follow admission as a lawful permanent resident, see Matter of S., 5 I & N Dec. 116, 117-18 (BIA 1953), the courts of appeals have read the statute differently.  It was the Second Circuit that held initially, based on both the statutory language and the legislative history, that the seven years of domicile need not occur after attainment of permanent residency status.  See Lok v. INS, 548 F.2d 37, 39-41 (2d Cir. 1977).  Recently, the Seventh Circuit has agreed with

the Second Circuit's approach.  See Castellon-Contreras v. INS, 45 F.3d 149, 152-54 (7th Cir. 1995).  Just this year, the Fifth Circuit ruled in accord with the Second and Seventh Circuits on this issue.  See White v. INS, 75 F.3d 213 (5th Cir. 1996).

The Ninth Circuit has wavered.  In Castillo-Felix v. INS, 601 F.2d 459 (9th Cir. 1979), it deferred to the BIA's interpretation, but it has since modified this position somewhat, creating an exception for children of aliens in a case analogous to this one, see Lepe-Guitron v. INS, 16 F.3d 1021 (9th Cir. 1994) (holding that aliens who, as minor children, lived with permanent resident parents before independently attaining permanent resident status may count that period toward section 212(c)'s seven-year domicile requirement).  Most recently, that court held that aliens granted temporary resident status under the amnesty provisions of the Immigration Reform and Control Act of 1986, 8 U.S.C.  1255a, may count the period as a temporary resident toward the seven-year domicile requirement.  Section 212(c), Ortega de Robles v. INS, 58 F.3d 1355 (9th Cir. 1995).

The Fourth Circuit is the only court of appeals to have accepted the BIA's interpretation of section 212(c) in all respects.  See Chiravacharadhikul v. INS, 645 F.2d 248 (4th Cir.), cert. denied, 454 U.S. 893 (1981).  When this issue previously arose before us, we recognized the differing interpretations but declined to resolve the issue at that time.  See Graham v. INS, 998 F.2d 194, 195 (3d Cir. 1993). In this case, the matter is squarely before us.

Morel's argument, and one which the government has never satisfactorily answered in this case, is based on the distinction made in the statute itself between "admi[ssion] for permanent residence" and "lawful . . . domicile."  The INA defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C.  1101(a)(20).  The INA does not define "domicile," but the term is ordinarily understood to mean physical presence with an intent to remain in that place indefinitely.  See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); Graham, 998 F.2d at 195.  Therefore, in order for an alien to establish a "lawful" domicile, the alien must be legally capable of forming an intent to remain in the United States indefinitely.  See Castellon-Contreras, 45 F.3d at 153.

Aliens such as those admitted as temporary visitors, students or workers may not lawfully form an intent to remain in the United States because they have visas that require that the holder have "a residence in a foreign country which he has no intention of abandoning." 8 U.S.C.  1101(a)(15).  This excludes them as lawful "domiciliaries."  See Graham, 998 F.2d at 196; see also Melian v. INS, 987 F.2d 1521, 1525 (11th Cir. 1993)(alien on temporary visitor visa cannot lawfully establish intent to remain since maintenance of foreign domicile required); Brown v. INS, 856 F.2d 728, 731 (5th Cir. 1988)(alien on student visa cannot lawfully establish intent to remain since maintenance of foreign domicile required); Anwo v. INS, 607 F.2d 435, 437

(D.C. Cir. 1979)(same).  Likewise, an alien who enters the country illegally cannot have a lawful intent to remain here. Castellon-Contreras, 45 F.3d at 153.

It does not follow that the two statutory phrases – admission for permanent residence and lawful domicile – are co-extensive.  Certain categories of aliens may lawfully form an intent to remain here without having been admitted for permanent residence.  For example, aliens holding G-4 visas, which are issued to nonimmigrants who are "officers, or employees of . . . international organizations [recognized under the International Organizations Immunities Act, 22 U.S.C.   288-288j], and the members of their immediate families," 8 U.S.C. 1101(a)(15)(G)(iv), may legally intend to remain in this country. See Elkins v. Moreno, 435 U.S. 647, 666 (1978).  Similarly, certain foreign businesspersons and investors, see 8 U.S.C. 1101(a)(15)(E), and refugees granted admission to escape persecution in their home countries, see 8 U.S.C.   1101(a)(42), may legally establish a domicile in the United States.  The Seventh and Ninth Circuits have also noted that aliens granted temporary resident status under the amnesty provisions of the Immigration Reform and Control Act of 1986, 8 U.S.C.   1255a, may intend to remain indefinitely in the United States.  See Ortega de Robles v. INS, 58 F.3d 1355, 1360-61 (9th Cir. 1995); Castellon-Contreras v. INS, 45 F.3d 149, 154 (7th Cir. 1995).

The INS concedes that there are categories of aliens who may legally intend to remain in the United States without being admitted as permanent residents, but nevertheless insists that section 212(c) requires seven years of lawful domicile following admission as a permanent resident.  But the two requirements of section 212(c) are distinct and independent conditions.  Nothing in the statute suggests that these requirements qualify or limit one another in a way that would require that all seven years of "lawful domicile" have been in a "permanent resident" status.  See Castellon-Contreras, 45 F.3d at 153; Rosario v. INS, 962 F.2d 220, 223 (2d Cir. 1992); see alsoMark A. Hall, Comment, Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act, 47 U. Chi. L. Rev. 771, 775-76 (1980).  The INS' interpretation is thus inconsistent with the plain reading of the language of section 212(c).

The plain language of a statute "should be conclusive, except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' "  United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242 (1989) (alteration in original) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). The plain language of section 212(c) is consistent with its purpose, which is to permit application for a waiver of deportation for individuals who have established significant ties to this country.  See Castellon-Contreras, 45 F.3d at 153 ("[T]he plain meaning of the term `lawful unrelinquished domicile' . . . . does not lead to either an absurd result, or one at odds with Congressional policy.").  Although, as the Lok court noted, the legislative history of section 212(c) also supports the more liberal interpretation, see 548 F.2d at 40-41 (quoting Senate

Report excerpt suggesting that Judiciary Committee had considered but rejected proposal to limit waiver eligibility to aliens accumulating seven years' domicile after admission as permanent residents), we need not attempt to construe legislative history when the provision itself is clear. See Blum v. Stenson, 465 U.S. 886, 896 (1984)("Where . . . resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.").

The INS argues that we should defer to the BIA's interpretation under the rule of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), because the BIA's position represents that of the agency charged with the statute's administration. Of course we recognize that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Id. at 844. However, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

We believe that in this case the intent of Congress is explicit, and the BIA's interpretation of section 212(c) is manifestly contrary to both the provision's language and purpose. By imposing a requirement that an alien have completed the entire seven years permanent residency before his or her application for relief from deportation may be considered, the BIA has created an additional obstacle to relief which Congress did not include in the statute.

                                    D.

That conclusion leads us to consider whether Morel can establish the requisite seven years of lawful domicile by relying in part upon the domicile of his mother prior to his reaching the age of majority. We know of only two courts that have directly addressed whether the domicile of a parent may be imputed to his or her child for determination of the child's eligibility for section 212(c) relief, and both have answered this question in the affirmative.

In Rosario v. INS, 962 F.2d 220 (2d Cir. 1992), the court explained that because the legislative history of the INA does not define "domicile," it would look to the common-law meaning of that term. Citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989), the Rosario court concluded that "[a] minor's domicile is the same as that of its parents, since most children are presumed not legally capable of forming the requisite intent to establish their own domicile." Rosario, 962 F.2d at 224.

Similarly, the Court of Appeals for the Ninth Circuit in Lepe-Guitron v. INS, 16 F.3d 1021 (9th Cir. 1994), held that children obtaining permanent resident status before reaching majority may count their parents' period of lawful domicile toward their own. Although in its earlier decision in Castillo-Felix v. INS, 601 F.2d 459 (9th Cir. 1979), that court had upheld the INS interpretation of "lawful unrelinquished domicile as

accumulating only after the alien acquires permanent residence, in Lepe-Guitron the court adopted a more expansive interpretation of "domicile" for children. The court relied upon both the common-law notion that a child's domicile follows that of her parents and its belief that "section 212(c)'s core policy concerns would be directly frustrated by the government's proposal to ignore the parent's domicile in determining that of the child." 16 F.3d at 1025.

The reasoning that guided the courts in Rosario and Lepe-Guitron leads us to a similar conclusion. In Holyfield the Supreme Court considered whether children born out of wedlock to parents who were members of the Choctaw Indian Tribe and residents and domiciliaries of the Choctaw Reservation were "domiciled" on that reservation within the meaning of the Indian Child Welfare Act, although they had never been physically present on the reservation. The Court concluded that the children were in fact domiciliaries of the reservation, based on the generally accepted meaning of the term "domicile" and because applying that definition would be consistent with the purpose of the statute. In light of the fact that Congress had neither defined "domicile" in the Indian Child Welfare Act nor demonstrated an intent that its definition should be a matter of state law, the Court "start[ed] with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used," viewed "in the light of the object and policy of the statute." 490 U.S. at 47 (citations omitted).

The Holyfield court explained that for adults, domicile is established by physical presence in a particular place plus an intent to remain there. Id. at 48. One acquires a "domicile of origin" at birth, and retains that domicile until s/he chooses a new one. However, because "most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." Id. Thus, it follows that "[o]n occasion, a child's domicile of origin will be in a place where the child has never been." Id.(quoting Restatement (Second) of Conflict of Laws  14 cmt. b (1988)).

Based on the reasoning in Holyfield, we too conclude that the domicile of a parent may be imputed to his or her child for purposes of determining whether the child has met the seven year domicile requirement of section 212(c). As with the Indian Child Welfare Act construed in Holyfield, Congress neither defined "domicile" in the INA nor indicated that it should be interpreted by reference to state law. Moreover, application of the common-law definition of "domicile" here is consistent with the "object and policy" of section 212(c), which is to provide relief to aliens for whom deportation "would result in peculiar or unusual hardship," S. Rep. No. 355, 63d Cong., 2d Sess. 6 (1914)(discussing purpose of the 7th Proviso to section 3 of the Immigration Act of 1917, the precursor to section 212(c)).

Various provisions of the INA reflect Congress's intent to prevent the unwarranted separation of parents from their children. For example, the INA provides an immigration preference for the alien children of permanent residents and

United States citizens, 8 U.S.C.  1152(a)(4), 1153(a)(1) & (2), and children applying for permanent residency status from outside the United States receive the same priority date and preference category as that of their parents, 8 C.F.R. 245.1(e)(2)(vi)(B)(1) (1996).  The INA also waives excludability for certain aliens who have helped their children enter the country illegally.  8 U.S.C.  1182(a)(6)(E)(ii).  See Lepe-Guitron, 16 F.3d at 1025.

The BIA's interpretation of "domicile" as it applies to children is plainly inconsistent with the term's customary meaning. Moreover, the BIA's restrictive interpretation violates the principle that ambiguous deportation provisions should be construed in favor of the alien.  See INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987); Costello v. INS, 376 U.S. 120, 128 (1964); Rosario, 962 F.2d at 225.  We therefore decline to defer to its construction in this instance.

Having concluded that the domicile of a minor child may follow that of his or her parents in appropriate circumstances, the issue arises as to which parent's domicile should be determinative.  At common law, the domicile of a child born in wedlock followed that of the father, while an "illegitimate" child assumed the domicile of the mother. See Restatement (Second) of Conflict of Laws  14(2) (1988); Holyfield, 490 U.S. at 48.  In Rosario, the court of appeals declined to follow the common-law definition of "domicile" to the extent that it relied upon the marital status of the child's parents for purposes of section 212(c), and decided instead that a minor should be permitted "to establish domicile through a parent with whom he had a significant relationship during the time in question."  962 F.2d at 224.  We agree with the Rosario court that such an approach better serves "the ameliorative purpose of  212(c)." Id.  It is more consistent with Congress' concern with keeping families intact, reflected in the other provisions referred to above, to have the imputation of a child's domicile turn on the nature of the relationship between parent and child rather than on the status of the parents' relationship.

Of course, it does not follow that satisfaction of the seven year domicile requirement through the imputation of domicile of a parent to a minor child will alone warrant the waiver authorized by section 212(c).  The waiver power given by Congress to the Attorney General and delegated by the Attorney General to the BIA is a discretionary one.  Undoubtedly, the BIA will take various factors into consideration, such as the length of the alien child's stay in this country, the child's age, the reasons for the child's failure to satisfy independently the seven year lawful domicile requirement, and the nature of the child's relationship with the domiciliary parent.  For example, a child prevented from rejoining his or her parent in this country because of the outbreak of hostilities abroad may be treated differently than one who was separated from the domiciliary parent for a substantial period of the time at issue for other reasons.

In this case, there is no indication that the BIA exercised any discretion.  In addition, the record is

insufficient to permit us to determine if Morel even established the requisite period of domicile through his mother. Because the IJ and BIA decided that the date from which Morel's mother established a lawful unrelinquished domicile in this country was irrelevant for purposes of Morel's case, Morel was not given an opportunity to present evidence establishing the period of his mother's domicile or the nature of his relationship with her. We will therefore remand for determination of these issues.

IV.

For the reasons set forth above, we will grant Morel's petition for review and remand the matter to the BIA for further proceedings consistent with this opinion.

_____


Morel v. Immigration and Naturalization Service, No. 95-3271


GREENBERG, Circuit Judge, dissenting.

Morel seeks relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c), which as germane here, provides that:

> Aliens lawfully admitted for permanent
> residence who temporarily proceeded abroad
> voluntarily and not under an order of
> deportation, and who are returning to a
> lawful unrelinquished domicile of seven
> consecutive years, may be admitted in the
> discretion of the Attorney General without
> regard to the provisions of subsection (a) of
> this section. . . .

Section (a) lists classes of aliens who shall be excludable from admission into the United States and Morel is excludable under that list by reason of his conviction for possession of cocaine. As written, section 212(c) cannot possibly apply in this case because Morel entered the United States in 1989 and, at least insofar as appears in these proceedings, never has "temporarily proceeded abroad" and, in any event, is not seeking to reenter the country. In short, this case seemingly has nothing to do with section 212(c) as that section plainly deals only with exclusion of aliens. Thus, a person of ordinary intelligence, not trained in the law, reading section 212(c) and given the facts of this case would conclude that Morel's petition is frivolous.

Why, then, is section 212(c) even in issue here? The answer lies in the truth that I have come to know all too well, that in the arcane world of the law what seems simple and obvious often becomes complicated, particularly when a court thinks an act of Congress or of a legislature is unjust. In accordance with that process, section 212(c) lost its obvious meaning that it was applicable only to exclusion cases in 1976 in the decision

in Francis v. INS, 532 F.2d 268 (2d Cir. 1976). In Francis, the petitioner, Francis, had been convicted of a marijuana offense. He sought a review of a final order of deportation of the Board of Immigration Appeals entered against him, claiming that under section 212(c) he could apply to the Attorney General for discretionary relief from deportation. Francis, however, faced a seemingly insurmountable hurdle because under the Board's policy of applying section 212(c) as written, he was not eligible for relief since he had not departed temporarily from the country after his conviction. To surmount this hurdle, Francis contended that the distinction between aliens who left the country and those who stayed "lacks any basis rationally related to a legitimate governmental interest, and therefore, deprives him of the equal protection of the law." Id. at 269.

The Court of Appeals for the Second Circuit agreed with Francis. While it did not fault the Board for its interpretation of section 212(c), and it acknowledged that the "authority of Congress and the executive branch to regulate the admission and retention of aliens is virtually unrestricted," 532 F.2d at 272, it nevertheless concluded that "[r]eason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time." Id. at 273. Thus, the court held on equal protection grounds "that the Board's interpretation of Section 212(c) is unconstitutional as applied to this petitioner." Id. Accordingly, the court remanded the case to the Board so that the Attorney General could exercise discretion under section 212(c). In Matter of Silva, 16 I. & N. Dec. 26, 30 (BIA 1976), the Board adopted the Francis ruling and apparently the Board has applied it nationwide ever since. See, e.g., Katsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993), cert. denied, 114 S.Ct. 902 (1994).

We, of course, do not deal directly with the question the court considered in Francis, as the Immigration and Naturalization Service accepts the holding in that case and thus, as the majority notes, "does not now dispute the applicability of section 212(c) to deportation proceedings." Typescript at 9. Although I believe that the Francis holding is questionable, I will accept the Francis court's conclusion that the distinction between aliens who leave and return and those who never leave denies equal protection of the law to the latter group. But I cannot understand how the Francis court reached the conclusion that it was the Board's interpretation of section 212(c) that was unconstitutional. Francis, after all, was not a case in which an agency with a reasonable choice between possible interpretations of a statute chose an interpretation that rendered the statute unconstitutional rather than valid. Quite to the contrary, section 212(c), as written, clearly did not apply to Francis. Indeed, the Francis court, following the Court of Appeals for the Ninth Circuit in Arias-Uribe v. INS, 466 F.2d 1198 (9th Cir. 1972), acknowledged that "the Board's interpretation is consistent with the language of Section 212(c)." Francis, 532 F.2d at 271-72. In the circumstances, there is no escape from

the conclusion that, if the Francis court's equal protection holding was correct, it was section 212(c) itself and not the Board's interpretation of it that was unconstitutional.

This distinction is not semantic. It is clear that a court should construe an ambiguous statute to be constitutional if such a construction is reasonable. DeBartolo Corp. v. Florida Gulf Coast Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397 (1988); United States v. A.D., 28 F.3d 1353, 1358-59 (3d Cir. 1994). But, because of the clarity of section 212(c), that principle could not have justified the court's remedy in Francisafter its finding that there had been an equal protection violation, as no reasonable construction could have saved section 212(c). Indeed, the court in Francis did not claim to be construing an ambiguous statute to be constitutional. Rather, without explaining why its constitutional conclusions justified granting Francis the right to seek discretionary relief from deportation, the court simply granted him that right.

The problem with the Francis court's remedy is that it may be that the equal protection violation found by the court should not have led to the holding that Francis was eligible for relief. Rather, the court instead should have invalidated section 212(c). Then Congress could have determined whether to apply section 212(c) in deportation cases or whether relief under the section would not be available in either deportation or exclusion cases. After all, as we explained in Fields v. Keohane, 954 F.2d 945, 950 (3d Cir. 1992), a court cannot invalidate a law on constitutional grounds and create in its stead a law that the legislature, in this case Congress, would not have enacted. The Francis court, however, upon finding the equal protection violation, rewrote section 212(c) to apply far beyond its written bounds. Board Member Appleton correctly assessed what happened in his concurring opinion in Silva: "Section 212(c) has now been judicially rewritten. . . . This may be desirable, but it is not what Congress wrote, nor what it intended." Silva, 16 I. & N. Dec. 26, at 31-32. I emphasize that in rewriting section 212(c) the Francis court did not merely invalidate an exception and leave the basic statute in place. The court wrote a new law which applied to a class of persons, i.e., aliens subject to deportation, that Congress never mentioned or intended to benefit in section 212(c). Thus, the court reached what it thought was a just result and section 212(c) lost its obvious meaning.

The Francis court's rewriting of section 212(c) has had far-reaching consequences. It appears from the reported cases that the section now is applied in most instances to aliens who have not left the country following their criminal convictions. See, e.g., White v. INS, 75 F.3d 213 (5th Cir. 1996); Graham v. INS, 998 F.2d 194 (3d Cir. 1993); Katsis v. INS, 997 F.2d at 1070; Chiravacharadhikul v. INS, 645 F.2d 248, 249 (4th Cir), cert. denied, 454 U.S. 893, 102 S.Ct. 389 (1981); Castillo-Felix v. INS, 601 F.2d 459, 462 (9th Cir. 1979). Thus, Congress passed a statute intended for use in one situation that now appears to be used principally, perhaps almost exclusively, in another. Inasmuch as the Constitution vests legislative power in Congress

and not the courts the remedy in Francis, to put it mildly, is disturbing.

Yet, I will accept not only the equal protection conclusion in Francis, but the remedy that the Francis court provided, i.e., applying the statute to aliens who did not leave the country after their criminal convictions. Because the INS does not challenge the appropriateness of the Francis remedy I have no other choice. Yet it is fitting to consider the problems with the Francis decision in an analysis of the issue at hand.

While the Board has acquiesced in Francis, it has adopted an interpretation of section 212(c) that requires that Francis be applied within reasonable boundaries, as it has held for 40 years "that an alien's lawful domicile begins to accrue only after lawful admission to this country for permanent residence." Graham v. INS, 998 F.2d at 195. See also Madrid–Tavarez v. INS, 999 F.2d 111, 112 (5th Cir. 1993) ("For the last forty years, the BIA has interpreted this language as requiring that to be statutorily eligible, the alien must have been a lawful permanent resident of the United States for at least seven years prior to his or her application for 212(c) relief."). Other courts of appeals have upheld this interpretation. SeeChiravacharadhikul v. INS, 645 F.2d at 250; Castillo–Felix v. INS, 601 F.2d at 467 ("For this reason, and because of the deference which we must give to the INS' longstanding and consistent interpretation, we hold that, to be eligible for [212](c) relief, aliens must accumulate seven years of lawful unrelinquished domicile after their admission for permanent residence."). As far as I am concerned the administrative interpretation is correct, as section 212(c) should be read as a whole with the terms "permanent residence" and "lawful unrelinquished domicile of seven consecutive years" relating to each other.

One would think that it scarcely need be stated that ordinarily the courts owe deference to an administrative interpretation of a statute. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2881–83 (1984). As the Supreme Court recently has indicated, while a statute's plain meaning must be given effect, "[w]hen the legislative prescription is not free from ambiguity, the administrator must choose between conflicting reasonable interpretations [and] [c]ourts, in turn, must respect the judgment of the agency empowered to apply the law to varying fact patterns." Holly Farms Corp. v. NLRB, 116 S.Ct. 1396, 1401 (1996) (internal quotation marks omitted). If there ever was a case for Chevron deference, this case is the one. We deal here with a statute that reasonably can be read to support the Board's position. Furthermore, the Board does not ask us to approve a new interpretation. Rather, we are urged merely to approve an administrative interpretation followed consistently for many years and, significantly, adopted by other courts of appeals.

It is also important to recognize that Congress in 1990 amended section 212(c) by narrowing the class of aliens who could be admitted at the discretion of the Attorney General by excluding from it aliens convicted of one or more aggravated

felonies for which the alien served a term of imprisonment of at least five years. See Immigration Act of 1990, Pub. L. No. 101-649, 511(a), 104 Stat. 4978, 5052 (1990); Scheidemann v. INS, 83 F.3d at 1519-20. The Board's approach in construing section 212(c) is in harmony with Congress's action in limiting the class eligible for relief under that section. Congress has continued to manifest a restrictive approach to criminal aliens. Thus, in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 440 and 441, 110 Stat. 1214, 1278-79 (1996), Congress amended the Immigration and Nationality Act to expand the list of crimes constituting deportable aggravated felonies and to provide for expedited deportation of criminal aliens who have served their sentences. To me the congressional intent with respect to criminal aliens is clear and I think the Board's interpretation of section 212(c) accords with Congress's approach.

It is also significant that we deal with a case in which, as I have explained, the statute is being applied to allow relief to a class of litigants Congress never intended to be eligible for relief. Consequently, it is all the more appropriate for us to defer to the Board's interpretation that limits the eligible persons within that class. After all, as I have pointed out, no reasonable person could read the words of section 212(c) and interpret them to mean that Morel can be eligible for the discretionary relief afforded by the section.

I find it ironical that the majority rejects Chevrondeference in this case on the theory that the "plain language" of section 212(c) demonstrates the "explicit" intent of Congress. Typescript at 14-15. The absolutely undeniable truth is that if we apply the plain language of section 212(c), we will uphold the Board and deny Morel's petition. While I understand why, if we follow Francis, we do not apply the plain language of section 212(c) and limit the section to exclusion cases, our refusal to do so is, for the reasons I have stated, an additional justification for declining to upset a long-standing administrative practice which is supported by other courts of appeals.

Finally, the Board's interpretation makes sense. It is clear that Congress required the seven-year domicile because it wanted to confine the opportunity to apply for discretionary relief under section 212(c) to persons with a substantial connection to this country as demonstrated by their lengthy presence. Morel came into this country on December 20, 1989, committed his drug offense in August 1991, and was convicted on January 6, 1993. Morel's attorney admitted at oral argument, as the logic of his argument required, that if we accepted his position, then an alien who committed a crime immediately upon entering the country could be eligible for discretionary relief as long as the alien satisfied the seven-year domicile requirement. Can anyone really believe that Congress intended that by the use of an imputed domicile an alien with only such a fleeting connection to this country should be eligible for section 212(c) relief? Morel's 20-month stay in this country before he committed his crime is not much more substantial.

In closing, I reiterate that I do not understand why we do not follow a consistent, reasonable, long-standing administrative interpretation that has been approved by other courts of appeals and which is in harmony with the congressional approach to criminal aliens, and hold that Morel is not eligible for section 212(c) relief because he had not been a lawful permanent resident of the United States for seven years before applying for that relief.  In view of the language of section 212(c), it is clear beyond doubt that the denial of the opportunity to Morel to apply for discretionary relief will further the will of Congress, whereas making him eligible for discretionary relief will frustrate that will.  Accordingly, I dissent and would deny the petition for review.