Stavros KATSIS, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 92–3608.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 11, 1993.

Decided July 6, 1993.

Rehearing Denied Aug. 9, 1993.

James J. Orlow, Orlow & Orlow, Philadelphia, PA, for petitioner.

Frank W. Hunger, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, David J. Kline, Carl H. McInyre, Jr. and Charles E. Pazar, Attys., Office of Immigration Litigation, Dept. of Justice, Washington, DC, for respondent.

Before: GREENBERG, NYGAARD, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In this case, an alien who was once lawfully admitted to the United States for permanent residence later became subject to an administratively final deportation order. After the entry of this final deportation order, the alien moved to reopen immigration proceedings to obtain discretionary relief from deportation. By statute, such relief is available only to aliens lawfully admitted for permanent residence. This petition for review presents the question whether the Board of Immigration Appeals (BIA or Board) may deny as a matter of law a motion to reopen proceedings to obtain discretionary relief from deportation on the ground that the alien movant is no longer statutorily eligible for such relief because his status as an alien lawfully admitted for permanent residence changed when he became subject to an administratively final deportation order. Concluding that it may, we deny the petition for review.

## I. BACKGROUND

Petitioner Stavros Katsis is a native and citizen of Greece. He was admitted to the United States as a lawful permanent resident in 1983. In 1988, he was convicted of a controlled substance violation, for which he served a prison term of approximately two years. Based on this conviction, in January 1989, Respondent Immigration and Naturalization Service (INS) commenced deportation proceedings against Katsis under section 241(a)(11) of the Immigration and Nationality Act (INA or Act), 8 U.S.C.A. § 1251(a)(11) (West 1970).

During a series of hearings in 1990 before various immigration judges (IJ), Katsis conceded deportability and applied for a waiver of deportability under section 212(c) of the Act, 8 U.S.C.A. § 1182(c) (West 1993). Section 212(c) permits aliens "lawfully admitted for permanent residence" to apply for such a waiver. In November 1990, the IJ found Katsis deportable. At that same time, although finding Katsis to be statutorily eligible for a section 212(c) waiver, the IJ denied him the requested waiver on discretionary grounds after determining that the considerations favorable to permitting Katsis to remain in this country did not outweigh his conviction for a serious drug offense.

The IJ's finding of deportability was never appealed; however, in November 1990, Katsis appealed to the Board the IJ's denial of the section 212(c) waiver. The Board af-

firmed in September 1991. Katsis does not dispute the INS's assertion that he became subject to an administratively final deportation order when the Board affirmed the IJ's decision. Katsis petitioned this court for review of the Board's decision to deny him the waiver, and in an unpublished memorandum opinion, we affirmed. *Katsis v. INS,* 972 F.2d 1331 (3d Cir.1992) (Rosenn, J.).

In August 1992, Katsis submitted a motion to the Board to reopen proceedings under 8 C.F.R. §§ 3.2 and 3.8. The motion set forth the existence of "new evidence that would serve to bolster his equities for a discretionary determination under section 212(c)" as required under those regulations. *In re Katsis,* BIA File No. A37 588 636, slip op. at 3 (Sept. 16, 1992). The Board denied this motion as a matter of law without reaching the discretionary aspect of the statute because it determined that Katsis was statutorily ineligible for waiver at the time he submitted his motion to reopen. *Id.* The Board so determined because it deemed he was no longer an alien "lawfully admitted for permanent residence" at the time he filed his motion to reopen, as required by section 212(c), in that he was then subject to an administratively final order of deportation.

Katsis timely filed in this court a petition for review of the denial of his motion to reopen.[1]

## II.  DISCUSSION

### A.  Standard of Review

Resolution of this case depends on application of the proper standard of review for the Board's construction of INA provisions. The Supreme Court clearly set forth the framework for review of an agency's construction of the statute it administers in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ As background, the Court stated, " 'The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' " *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782 (omission in original) (citing *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)). When, as here, Congress has *implicitly* delegated authority to an agency on a particular question, i.e., where it has left a gap without *expressly* delegating "authority to the agency to elucidate a specific provision of the statute by regulation[,] ... a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. at 2782 (footnotes omitted). Under a well settled principle of deference, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* (footnote omitted). *See also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.").

■ Thus, "when a court reviews an agency's construction of the statute it administers, it is confronted with two questions." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781.

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the

---

1. The Board exercised jurisdiction over Katsis's motion to reopen pursuant to 8 U.S.C.A. § 1103 (West Supp.1993); *Wolf v. Boyd,* 238 F.2d 249, 256 (9th Cir.1956), *cert. denied,* 353 U.S. 936, 77 S.Ct. 814, 1 L.Ed.2d 759 (1957). This court exercises jurisdiction to review the Board's decision pursuant to 8 U.S.C.A. § 1105a(a) (West 1970 & Supp.1993).

court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). *See also Butros v. INS,* 990 F.2d 1142, 1148–49 (9th Cir.1993) (en banc) (Trott, J., dissenting).[2]

■ In sum, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (citations omitted), unless that interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. *See also Butros,* 990 F.2d at 1149 (Trott, J., dissenting).

## B. Applicable Law

■ Motions to reopen immigration proceedings "are disfavored for the same reasons as are . . . motions for a new trial on the basis of newly discovered evidence." *INS v. Doherty,* —— U.S. ——, ——, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992). There are three grounds upon which the Board may deny a motion to reopen: (1) failure to establish a *prima facie* case for the relief sought; (2) failure to introduce previously unavailable, material evidence; and (3) a determination that even if these requirements were met, the movant would not be entitled to the discretionary relief sought. *Id.* —— U.S. at ——, 112 S.Ct. at 725. This case turns on the first ground, where such a *prima facie* showing encompasses a showing of statutory eligibility for relief under section 212(c) of the Act.

Section 212(c) of the Act provides in pertinent part:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished residence of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section [which provides a list of excludable aliens]. . . .

8 U.S.C.A. § 1182(c). On its face, this statute does not seem to apply to Katsis's case, as the facts here do not involve his leaving the country. Under case law, however, this discretionary relief may be extended to deportable aliens who have not exited the United States. *Tapia–Acuna v. INS,* 640 F.2d 223, 224–25 (9th Cir.1981); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976); *Matter of Silva,* 16 I. & N. Dec. 26 (BIA 1976).

The term "lawfully admitted for permanent residence" is defined at section 101(a)(20) of the Act to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed.*" 8 U.S.C.A. § 1101(a)(20) (West 1970) (emphasis added). This is the statutory provision the Board has interpreted in order to rule on Katsis's motion to reopen proceedings to obtain discretionary relief under section 212(c).

Katsis fails to identify any express congressional pronouncements on the issue of what will be deemed to trigger a change in an alien's status as a lawful permanent resident under section 101(a)(20) for purposes of section 212(c); independent inquiry has similarly revealed no congressional guidance in this matter. Whatever the Board's interpretation, then, it cannot be manifestly contrary to the statute. We must therefore proceed

---

**2.** Under *Chevron,* our review of the BIA's construction of the INA should parallel our review of the National Labor Relations Board's (NLRB) construction of the National Labor Relations Act (NLRA) insofar as each construction is that of an agency construing its own statute. We have stated in the labor context:

[W]hen reviewing [NLRB] orders the court must address three discrete issues. First, the court determines whether the NLRA provides a clear rule to be applied in the case, and if so,

whether the [NLRB] complied with the Act. If no clear rule is provided, the court then determines whether the NLRA permits the [NLRB] order that is the subject of the appeal. Finally, if the [NLRB] order is permissible, the court must review NLRB precedent to determine whether that order is consistent with such precedent.

*NLRB v. New Jersey Bell Tel. Co.,* 936 F.2d 144, 147–48 (3d Cir.1991).

to the second question set forth in *Chevron.* Thus, the issue in this case is whether the Board's interpretation of section 101(a)(20) in the context of section 212(c), which deems the status of a lawfully admitted resident alien to have changed upon entry of an administratively final deportation order and which merits substantial deference, is permissible, i.e., not arbitrary or capricious.[3]

C. The Board's Interpretation of Section 101(a)(20)

[redacted] To determine whether the Board's interpretation of section 101(a)(20) is permissible, we first examine what the Board has done and its reasons for doing so. In determining an alien's statutory eligibility for section 212(c) relief, the Board has considered the interplay between section 212(c) and section 101(a)(20) in the context of two separate issues. The first is a threshold issue of whether the alien has accrued the requisite seven consecutive years of unrelinquished lawful domicile to be statutorily eligible for section 212(c) relief; the second issue is whether, even if the accrual requirement is met, the alien is nonetheless precluded from obtaining section 212(c) relief because the alien's status as a lawful permanent resident changed before he or she filed a motion to reopen proceedings to obtain such relief.

In *Matter of Lok,* 18 I. & N. Dec. 101 (BIA 1981), *aff'd on other grounds,* 681 F.2d 107 (2d Cir.1982), the Board addressed the threshold issue of accrual. Because the accrual period of seven year's lawful residence would terminate if and when the alien's status as a lawful permanent resident changed, the Board framed the issue in general terms as follows: "At what point in the deportation proceedings does the status of an alien lawfully admitted for permanent residence come to an end?" *Id.* at 105. The Board carefully examined the deportation process and identified four stages "at which the status of an alien 'lawfully admitted for permanent residence' may be considered to have changed within the meaning of section 101(a)(20) of the Act," *id.:*

> (1) upon the immigration judge's initial determination of deportability, (2) when the immigration judge's order becomes administratively final, (3) when a United States Court of Appeals acts upon a petition for review of the Board's order or the time allowed for filing such petition expires, or (4) only upon the execution of the deportation order by the alien's departure, voluntary or enforced, from this country.

*Id.*

Before addressing each possibility, the Board noted that the mere occurrence of an act or event providing a basis for deportation is insufficient to change the alien's status as a lawful permanent resident under section 101(a)(20). *Id.* at 106. It then determined that termination of such status upon an IJ's initial adjudication of deportability would be premature because the alien has a right to appeal to the Board for *de novo* review of fact and law. *Id.*

The Board declined, however, to adopt the position that an alien present in this country under a final deportation order remains a lawful permanent resident until the order is executed, finding such a proposition inherently incongruous. *Id.; see also Lok v. INS,* 681 F.2d 107, 110 (2d Cir.1982) (after deportation order becomes final, alien resides in United States "as a matter of grace, not law"). It further concluded that lawful permanent resident status ought not continue through the process of judicial review after the entry of an administratively final deportation order because (1) authority to adjudicate deportability is vested primarily in the Attorney General and his delegates, the IJ and the Board; and (2) judicial review, in contrast to the Board's *de novo* review, is generally limited to ascertaining whether the order is supported by reasonable, substantial, and probative evidence of record. *Lok,* 18 I. & N. Dec. at 107. Additionally, the

3. If the Board's interpretation of section 101(a)(20) in the context of section 212(c) is permissible, then, if requested, we would review its determination of an alien's statutory eligibility under that permissible interpretation for abuse of discretion. *See Doherty,* — U.S. at —, 112 S.Ct. at 725 (abuse of discretion is proper standard of review when denial of motion to reopen is based on movant's failure to establish a *prima facie* case for the relief sought). Katsis does not raise this issue in his petition for review, however, and therefore it is not before this court.

Board observed that to hold that an alien subject to a final deportation order remains a lawful permanent resident throughout judicial proceedings following the entry of a final deportation order would encourage spurious petitions to the circuit courts for review, filed for the sole purpose of accumulating more time toward section 212(c) eligibility. *Id.*

The Board finally held as follows:

[T]he policies of the Act would best be served by deeming the lawful permanent resident status of an alien to end with the entry of a final administrative order of deportation—generally, when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired.

*Id.* at 105 (citations omitted). Thus, the Board clearly articulated the principle upon which it decided the case and the reasons why it adopted the principle.[4]

Several years after issuing its decision in *Lok,* the Board applied the *Lok* rule to an alien's motion to reopen proceedings to obtain section 212(c) relief in *Rivera v. INS,* 810 F.2d 540 (5th Cir.1987). *Rivera* is therefore analogous to the present case. As in the instant case, the alien, who had once been admitted to the United States as a lawful permanent resident, did not move to reopen deportation proceedings to obtain discretionary relief under section 212(c) until he was already subject to an administratively final deportation order. The Board deemed the alien's status as a lawful permanent resident of this country changed by the administratively final deportation order, which resulted in the alien's statutory ineligibility for section 212(c) relief and the consequent denial of his motion.

On petition for review, the Court of Appeals for the Fifth Circuit initially failed to accord deference to the Board's interpretation; it therefore rejected the Board's reliance on *Lok* and remanded the case. *Rivera v. INS,* 791 F.2d 1202, 1206–07 (5th Cir. 1986), *vacated on reconsideration,* 810 F.2d 540 (5th Cir.1987). On reconsideration, however, the court reversed itself, stating, "[W]e are persuaded that the Board's interpretation of the [INA] is not unreasonable; given the 'great deference' we must accord the [Board's] interpretation of that Act, we accept its interpretation and affirm its order." *Rivera,* 810 F.2d 540, 540. The court specifically noted that "[t]he [Board's] *Lok* opinion, which the Board carefully followed in the instant case, reflects careful consideration of the solution to the problem of when lawful residence in this country should terminate. We find nothing unreasonable about the BIA's rationale or its conclusion." *Id.* at 541. The court concluded that the BIA's interpretation is not only fair, but conserves the resources of "an already beleaguered Board" and "prevents the alien from stringing out his claims and delaying the ultimate disposition of his case." *Id.*

In at least seven subsequent cases, the Board has consistently applied the *Lok* rule to motions to reopen proceedings to obtain section 212(c) relief.[5] In the first case not reviewed by the Court of Appeals for the Fifth Circuit, *Gonzales v. INS,* 921 F.2d 236 (9th Cir.1990), *overruled by Butros v. I.N.S.,* 990 F.2d 1142 (9th Cir.1993) (en banc), the Court of Appeals for the Ninth Circuit upheld the Board's denial, based on *Lok,* of an alien's motion to reopen that was filed after the alien became subject to an administratively final deportation order. In the second case, *Vargas v. INS,* 938 F.2d 358 (2d Cir. 1991), the court rejected the Board's application of the *Lok* rule to motions to reopen. In

---

4. Further, the Board specifically addressed prior decisions suggesting a contrary holding by distinguishing them because they did not present the same issue for determination and by declaring them superseded to the extent any conflict may exist. *Id.* at 106–07.

5. In three of these cases, the Court of Appeals for the Fifth Circuit, citing its decision in *Rivera,* affirmed the Board's application of the *Lok* rule to motions to reopen to obtain section 212(c)

relief. *Prichard–Ciriza v. INS,* 978 F.2d 219, 222–23 (5th Cir.1992); *Ghassan v. INS,* 972 F.2d 631, 637–38 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993); *Garcia–Hernandez v. INS,* 821 F.2d 222, 224 (5th Cir.1987). In each of these cases, the Board's application of the *Lok* rule resulted in the denial of the alien's motion for the same reasons the motion was denied in the present case.

the third case, *Matter of Cerna*, Int.Dec. 3161, A–30257519, 1991 WL 353528 (BIA Oct. 7, 1991), the Board cited *Lok, Rivera,* and *Gonzales* in denying an alien's motion to reopen and the alien sought no judicial review of that denial. In the fourth case, *Butros*, 990 F.2d 1142, the Court of Appeals for the Ninth Circuit revisited and rejected the application of *Lok* to motions to reopen, thereby overruling *Gonzales.* We specifically note, however, that in both *Vargas* and *Butros* the courts failed to review the Board's interpretation of its own statute under the deferential standard that the Supreme Court articulated so clearly in *Chevron.*

Under *Chevron*, the court cannot substitute its preferred interpretation of section 101(a)(20) for the Board's if the Board's is permissible, i.e., not arbitrary or capricious. *Chevron*, 467 U.S. at 843–44 & n. 11, 104 S.Ct. at 2781–83 & n. 11. If for no other reason than ease of application, it is reasonable to attempt to establish one single standard for the time an alien's lawful permanent resident status changes for all purposes under section 212(c). *See Cerna*, 1991 WL 353528, at *15 ("Our interpretation of the law [under *Lok* ] established a rather straightforward test in an area of the law which is particularly contorted").

Furthermore, the standard itself is reasonable. As applied in the present case, it fairly gave Katsis an additional 10 months to discover any material evidence not available at the time the IJ originally found he was deportable and denied his application for a section 212(c) waiver. Keeping in mind that

motions to reopen are disfavored, *Doherty,* — U.S. at ——, 112 S.Ct. at 724, the Board's interpretation establishes a clear cut-off date that in effect operates like a statute of limitations to set the last day upon which an alien can establish statutory eligibility for section 212(c) relief on a motion to reopen proceedings.

This unambiguous cut-off date discourages unnecessary and prolonged litigation by its very clarity, promotes finality, and avoids adjudication of stale claims as all statutes of limitations do. It also allows the Board, on *de novo* appeal from an IJ's decision to deny an alien a section 212(c) waiver, to examine all the evidence relevant to a grant of discretionary relief under section 212(c) at one time, rather than in two separate proceedings. In a like manner, it operates to limit the circuit court's exposure to multiple petitions for review, as we have had in this very case.

Moreover, it sets the last day through which an alien can manipulate deportation proceedings by his or her after-the-fact manufacture of additional evidence of equities to balance the adverse factor or factors he or she must overcome to receive discretionary relief under section 212(c).[6] Under the Board's precedent in *Matter of Marin,* 16 I. & N. Dec. 581 (BIA 1978), "the adverse factors evidencing an alien's undesirability as a permanent resident" must be weighed against "the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interest of this country." *Id.* at 584. These social and humane consid-

---

**6.** Section 3.2 of the regulations, entitled "Reopening or reconsideration," provides in pertinent part:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing *unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.*

8 C.F.R. § 3.2 (emphasis added). Katsis points to the emphasized language to show that motions to reopen are specifically intended to take into account after-the-fact evidence. We disagree. Motions to reopen are specifically intended to take into account material evidence that was not available and therefore could not have been presented at the former hearing. The emphasized language comes into play under the indicated circumstances to *restrict* the evidence that may be presented on a motion to reopen if an alien has failed to apply for discretionary relief during earlier proceedings. In this context, although the restriction acknowledges that evidence manufactured after the fact may be used to support a motion to reopen, it is hardly a rousing encouragement for or approval of such tactics.

erations, or equities, are measured by examining evidence considered favorable to the exercise of section 212(c) discretion.

Some of these favorable considerations, by their very nature, cannot be created or materially augmented after a final deportation order has been entered. For example, an alien who entered the United States as an adult cannot alter history to gain the additional equity that would accompany entry as a young child. *Id.* at 584–85. Other favorable considerations, however, can, on the alien's own initiative or following advice of counsel, be systematically manufactured or significantly augmented during whatever time an alien manages to remain in this country through diligent efforts to keep alive immigration proceedings regarding his or her deportation. These considerations include:

> [F]amily ties within the United States, ... evidence of hardship to the [alien] and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to [an alien's] good character (e.g., affidavits from family, friends, and responsible community representatives).

*Id. Marin* is, in effect, a blueprint for crafting a set of circumstances to overcome adverse factors in an discretionary determination under section 212(c).

An alien's continuing ability to manufacture such evidence, whether legitimate or not, and the consequent incentive to file spurious petitions for review in the circuit court to extend the time for such manufacture, is a legitimate concern addressed by application of the *Lok* rule.[7] Surely an alien subject to an administratively final deportation order

cannot be heard to complain that he or she is in any way prejudiced by the Board's refusal to consider activities engaged in after that order became final. At that point the alien is clearly on notice that he or she may soon be departing this country.

In summary, the Board's interpretation establishes a standard that provides an alien with a fair amount of time to uncover legitimate evidence that was unavailable when the IJ originally denied a requested section 212(c) waiver. This standard at the same time reduces the incentive for an alien to string out his or her claims to avoid the ultimate disposition of the case, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Doherty,* — U.S. at — – —, 112 S.Ct. at 724–25. As a consequence, the Board's standard (1) discourages unnecessary litigation and promotes finality; (2) reduces both Board and circuit court exposure to multiple, piecemeal requests for consideration of one kind or another; and (3) reduces the incentive to file meritless petitions for review in the circuit courts, which lessens the burdens on those courts, just to buy the alien more time to create after-the-fact evidence of equities. For all these reasons, the Board's interpretation of section 101(a)(20) in the context of section 212(c) relief is reasonable, and not arbitrary or capricious, and therefore it is a permissible interpretation of the statute. *Butros,* 990 F.2d at 1150; *Rivera,* 810 F.2d at 541.

■■■■ Katsis asserts that the Board's interpretation is internally inconsistent because the standard it establishes renders him ineligible to file a motion to reopen, but not one to reconsider. The INS contends that the difference is logical given the goals each motion sets out to accomplish. We note that motions to reopen and to reconsider are the creations of regulation and not statute. *See*

---

7. The *Vargas* court rejected the application of *Lok* to motions to reopen in part because it concluded that "[t]he concern which motivated the creation of the rule in *Matter of Lok*—preventing an alien from manipulating deportability proceedings so as to acquire seven years of domicile—is not present here." *Vargas,* 938 F.2d at 361. We conclude, however, that insofar as ap-

plication of the *Lok* rule prevents an alien from manipulating deportation proceedings so as to acquire or enhance his or her equities under section 212(c) in an after-the-fact manner, the concern which motivated the creation of the *Lok* rule also supports its application to motions to reopen as a " 'product of reasoned decision-making.' " *Id.* (citations omitted).

*Doherty,* —— U.S. at ——, 112 S.Ct. at 724. Nonetheless, "deference is required whether an agency is interpreting the statute directly . . . or through a rule or regulation promulgated thereunder. *ALM Corp. v. United States EPA, Region II,* 974 F.2d 380, 383 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993). Therefore, on review we defer to an agency's construction of its own regulation, 'unless it is plainly erroneous or inconsistent with the regulation.'" *Beazer E., Inc. v. United States EPA, Region III,* 963 F.2d 603, 606 (3d Cir.1992).[8]

A motion for reconsideration looks for error in the proceedings based on the factual record as it stands and is successful only if a defect is found in the original decision. If error is found in a Board determination that an alien is deportable and undeserving of section 212(c) relief, reversal nullifies the finality of the deportation order and the consequent status change as well. Given that the deportation order cannot stand where such an error has been made, there is no reason to allow the deportation order to preclude a motion for reconsideration.

On the other hand, an alien is required to introduce new evidence in order to move to reopen proceedings, which introduction generally requires a new hearing and creates a different factual record on which to base either a redetermination of deportability or eligibility for section 212(c) relief or both. The policy concerns in favor of finality loom much larger in this context than in the context of a motion to reconsider because no error is asserted. Absent some sort of obstruction by the INS of an alien's ability to collect evidence not alleged here, the Board should be permitted to determine essentially this: If it takes longer than the period between the IJ's determination of deportability and ineligibility for section 212(c) relief and the Board's affirmance of that determination for an alien to find (or create) new evidence, either (1) the alien has not been sufficiently diligent in his efforts, (2) the probabilities do not favor the existence of material evidence

unavailable at the time of the IJ's decision, (3) any such evidence that may exist is stale, or (4) the alien should be given no more time to create evidence after the fact. We find nothing inconsistent in the Board's approach to these two types of motions, and its decision to distinguish between the two is reasonable.

Finally, Katsis suggests that the Board's reading of the statutes in question contradicts the right to reopen granted by 8 C.F.R. § 3.2. The regulation, however, cannot provide a right broader than that which is provided by a necessarily implicated statute. Section 212(c) contains pertinent language limiting its application to aliens "lawfully admitted for permanent residence." Section 101(a)(20) defines that term to exclude aliens who once were lawfully admitted for permanent residence but whose status has since changed. Congress left it to the Attorney General to interpret that language, and the Board, as the delegate of the Attorney General, has done so in a permissible fashion. The Board's permissible interpretation articulates the contours of the section 212(c) restriction pertinent here, and those contours cannot be said to contradict the INS regulations that create and govern motions to reopen. Rather, the regulations must be read, if possible, to conform to statutory mandates, and the Board has done so here. Therefore, its interpretation of its own regulations is not clearly erroneous or inconsistent with those regulations.

## III. CONCLUSION

The Board interprets section 101(a)(20) in the context of section 212(c) relief to mean that an alien's status as a lawful permanent resident changes when he or she becomes subject to an administratively final deportation order. This interpretation in the specific context of motions to reopen proceedings to obtain section 212(c) discretionary relief from deportation results in an alien's statutory ineligibility for such relief if the motion is filed after the alien becomes subject to such a final deportation order. This interpreta-

---

**8.** Katsis does not dispute the INS's interpretation of the INA to allow motions to reopen and to reconsider.

tion is a reasonable and, thus, a permissible construction of the statute. Because it is a permissible construction of the statute, this court will not disturb it.

Application of the Board's interpretation of section 101(a)(20) in the instant case results in a determination that Katsis was statutorily ineligible for discretionary relief under section 212(c) at the time he filed his motion to reopen proceedings to obtain such relief because he was then subject to an administratively final deportation order. Therefore, he was no longer a lawful permanent resident as is expressly required by section 212(c).

Accordingly, the Board's denial as a matter of law of Katsis's motion to reopen proceedings to obtain section 212(c) relief is consistent with its interpretation of the INA and will be affirmed. The petition for review will therefore be denied.

Each side to bear its own costs.