

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-1999

# Catney v. INS

Precedential or Non-Precedential:

Docket 98-3154

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Catney v. INS" (1999). *1999 Decisions.* Paper 142.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/142

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-3154

GERARD JAMES CATNEY,
Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE

On Petition for Review of an Order of the
Board of Immigration Appeals
No. A13-170-755

Argued: March 26, 1999

Before: BECKER, Chief Judge,
LEWIS and WELLFORD,* Circuit Judges.

(Filed: May 25, 1999)

  THOMAS E. MOSELEY, ESQUIRE
   (ARGUED)
  One Gateway Center, Suite 2600
  Newark, NJ 07102

  Counsel for Petitioner

_____

*Honorable Harry Wellford, United States Circuit Judge for the United
States Court of Appeals for the Sixth Circuit, sitting by designation.

FRANK W. HUNGER, ESQUIRE
Assistant Attorney General
DAVID M. McCONNELL, ESQUIRE
  (ARGUED)
Assistant Director
Office of Immigration Litigation
Civil Division
United States Justice Department
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

OPINION OF THE COURT

BECKER, Chief Judge.

This is one of the tidal wave of cases seeking relief from orders of deportation brought by permanent resident aliens who have committed certain enumerated crimes. While many of these individuals are long-time residents with deep roots in American communities, they face virtually automatic deportation under recent amendments to the Immigration and Nationality Act ("INA"), although in many cases the INS has only recently taken note of their long-past criminal activities.[1] While the Attorney General previously could exercise discretion to grant relief from such deportation orders, that discretion--as well as the right to judicial review of denials of such discretionary relief --has largely been eliminated by the recent amendments to the INA in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

The Petitioner is Gerard James Catney, a permanent resident alien ("PRA") who was born in Northern Ireland,

_____

1. See, e.g., Monica Rhor, For Joe Velasquez, There May Be No Second Chance, Phila. Inquirer, Mar. 31, 1999, at B1; Mirta Ojito, Old Crime Returns to Haunt an Immigrant, N.Y. Times, Oct. 15, 1997, at B1; Pamela Constable, Years Later, Immigrants Pursued by Their Pasts, Wash. Post, Feb. 24, 1997, at B1.

arrived in this country in 1962, at the age of three, and has lived here for thirty-seven years. He has been married for almost twenty years to a United States citizen and he has a five-year old daughter who is also a United States citizen. Catney credibly argues that the Board of Immigration Appeals ("BIA") incorrectly applied one provision of AEDPA to his case, and that one provision of AEDPA and another provision of IIRIRA violate the equal protection component of the Fifth Amendment's Due Process Clause. The government disputes each of these contentions, and further submits that Catney has waived his right to raise his constitutional claims before us because he did notfile a brief with the BIA and did not raise one of the constitutional issues in his notice of appeal to the BIA from the Immigration Judge's decision.

We decline to reach any of these issues, however, because we read our recent decision in Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999), as precluding our exercising jurisdiction over Catney's petition.2 Rather, we conclude that Catney must raise his claims of legal error--whether constitutional or otherwise--in a petition for habeas corpus if he is to obtain relief from the BIA's order.

I. AEDPA and IIRIRA

A. Judicial Review of Deportation Orders

In 1996, Congress enacted both AEDPA and IIRIRA, which dramatically restricted the scope of federal court review of certain deportation orders. See AEDPA, Pub. L. No. 104-132, S 440(a), 110 Stat. 1214, 1276-77 (1996); IIRIRA, Pub. L. No. 104-208, div. C, SS 306(a)(2)(C), 309(c)(4)(G), 110 Stat. 3009-546, -607 to -608, -626 to -627 (1996). Prior to the enactment of these statutes, courts of appeals could review most orders of deportation. See 8 U.S.C. S 1105a (repealed by IIRIRA). However, section 440(a) of AEDPA provides that "[a]ny final order of

_____

2. The government filed a petition for rehearing en banc in Sandoval on April 26, 1999. On May 7, 1999, an order was issued by this Court denying that petition.

deportation against an alien who is deportable by reason of having committed a criminal offense covered in [various sections of the INA]3 shall not be subject to review by any court." Id. S 1105a(a)(10) (repealed by IIRIRA).

Section 309(c)(4)(G) of IIRIRA provides for transitional judicial-review rules that apply to cases commenced before April 1, 1997, in which a final order of deportation was filed after October 30, 1996, while IIRIRA section 306(a)(2)(C) (codified at 8 U.S.C. S 1252(a)(2)(C) (Supp. II 1996)) sets forth the appropriate judicial-review mechanism for cases commenced on or after April 1, 1997. The latter two provisions are, for our purposes, similar to AEDPA section 440(a). The INS commenced deportation proceedings against Catney in 1992. The BIA entered a final order of deportation against him on February 11, 1998. This case is therefore governed by the transitional rules of IIRIRA.

B. Relief from Deportation

Although "criminal aliens" such as Catney have long been subject to deportation, at least two provisions of the INA formerly provided these aliens with the opportunity to seek discretionary relief from deportation: section 212(c), and section 212(h), which we discuss infra.

1. Section 212(c)

Section 212(c) gave the Attorney General discretion to waive deportation of certain PRAs. See 8 U.S.C. S 1182(c) (repealed 1996). Prior to 1990, section 212(c) provided that,

_____

3. The covered crimes include aggravated felonies, controlled substance convictions, certain firearm offenses, miscellaneous national security or defense crimes, and multiple convictions for crimes involving moral turpitude. In 1991, Catney pled guilty in New Jersey state court to armed robbery and armed burglary, and was sentenced to seven years imprisonment. Although Catney's brief describes the offense as a mere car theft, related to excessive drinking in response to stress, it was obviously of sufficient seriousness to trigger the statute. There is thus no dispute that Catney is a "criminal alien" subject to deportation under the INA, and that he is covered by the judicial-review and relief-from-deportation provisions we discuss in the text.

4

notwithstanding section 212(a)'s provisions for exclusion of certain aliens, "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General," with certain limited exceptions.

In a series of decisions, the BIA (which acts on behalf of the Attorney General) had interpreted section 212(c) to apply not only to PRAs who had temporarily left the country and were "returning to a lawful unrelinquished domicile," as the statute literally provides, but also to those PRAs who had left and returned, and then--at some later date--faced deportation. Therefore, PRAs who lived here for seven or more years and never left the country were not covered by section 212(c)'s waiver provision, but PRAs who lived here for seven or more years, and during that time happened to take a trip abroad (even a day-trip to Canada), would be eligible for the section 212(c) waiver if they ever faced deportation. In 1976, the Second Circuit extended the section 212(c) waiver to the final group of PRAs, i.e., those who had never left the country. See Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976). The INS acquiesced in the holding in Francis, and most courts of appeals followed it as well. See, e.g., Katsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993). Therefore, by the 1990s, section 212(c) offered all PRAs who had lawfully resided in this country for seven consecutive years the possibility of relief from deportation.

In 1990, section 212(c) was amended to eliminate a new category of cases from the Attorney General's discretion: PRAs deportable by reason of having committed certain aggravated felonies for which the alien had been imprisoned for at least five years. See Immigration Act of 1990, Pub. L. No. 101-649, S 511(a), 104 Stat. 4978, 5052. In 1996, AEDPA section 440(d) extended the list of ineligible PRAs much further, eliminating the Attorney General's discretion to grant relief from deportation for the same group of deportees for whom judicial review was curtailed in section 440(a) (i.e., those convicted of aggravated felonies, controlled substance offenses, certain firearm offenses, miscellaneous national security or defense crimes, or

5

multiple convictions for crimes involving moral turpitude).4 Therefore, under section 440(d) of AEDPA, criminal aliens such as Catney are ineligible for section 212(c) discretionary relief from the Attorney General. While the BIA has held that this provision applies retrospectively to cases pending on the date that AEDPA was enacted, we disagreed in Sandoval, holding that the provision does not apply to pending deportation cases such as Catney's. See Sandoval, 166 F.3d at 242.

## 2. Section 212(h)

Section 212(h) of the INA, like former section 212(c), provides the Attorney General with discretion to waive certain deportation orders. Section 212(h) permits the Attorney General to do so for those persons subject to deportation due to their commission of certain crimes if the alien is:

> the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and

---

4. The specific language of the proviso in section 212(c), added by section 440(d) of AEDPA, reads as follows: "This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense [listed above]." The BIA has held that, because the proviso only speaks of "an alien who is deportable," it does not apply to a PRA who has left the country and is excludable (rather than deportable) by reason of conviction of one of the relevant offenses. See In re Fuentes-Campos, Int. Dec. 3318, 17 Immigr. Case Rep. (MB) B1-267, -269 (BIA May 14, 1997) (en banc) (rejecting the government's argument that the proviso should apply to PRAs facing exclusion).

The difference between exclusion and deportation is that an alien who is physically present in this country is subject to deportation, while an alien who is attempting to enter or return to the country is subject to exclusion. IIRIRA has, for all relevant purposes, eliminated any disparate treatment of aliens on the basis of whether they face deportation or exclusion, replacing these two proceedings with the single "removal" proceeding.

6

> the Attorney General, in his discretion, . . . has
> consented to the alien's applying or reapplying for a
> visa, for admission to the United States, or adjustment
> of status.

8 U.S.C. S 1182(h)(1)(B), (h)(2) (1994 & Supp. II 1996). This
provision clearly applies to Catney, whose wife and
daughter are United States citizens. He is also the primary
breadwinner for his family, running his own house painting
business, which has been successful enough for the
Catneys to purchase their own home in New Jersey. While
his underlying request for section 212(h) relief is not before
us, he appears to have a colorable claim to such relief.

Section 348(a) of IIRIRA, however, added the following
proviso to section 212(h):

> No waiver shall be granted under this subsection in the
> case of an alien who has previously been admitted to
> the United States as an alien lawfully admitted for
> permanent residence if either since the date of such
> admission the alien has been convicted of an
> aggravated felony or the alien has not lawfully resided
> continuously in the United States for a period of not
> less than 7 years immediately preceding the date of
> initiation of proceedings to remove the alien from the
> United States.

8 U.S.C. S 1182(h) (Supp. II 1996).5  As a PRA who has
committed an aggravated felony since his lawful admission
to this country, Catney is covered by the proviso and is
ineligible for relief by the terms of section 212(h).

_____

5. Unlike section 440(d) of AEDPA, the proviso added by IIRIRA clearly
applies to pending cases such as the present one. IIRIRA provides that
the amendment made by section 348(a) "shall be effective on the date of
enactment of this Act [September 30, 1996] and shall apply in the case
of any alien who is in exclusion or deportation proceedings as of such
date unless a final administrative order in such proceedings has been
entered as of such date." IIRIRA S 348(b), 110 Stat. at 3009-639. As
noted, Catney was in deportation proceedings on September 30, 1996,
and his deportation order was not final until February 11, 1998.
Therefore, section 348(a) applies to him.

7

C. Administrative Proceedings

Catney initially sought relief from deportation under both section 212(c) and section 212(h). The Immigration Judge denied this relief on December 18, 1996. Catney filed a notice of appeal to the BIA, raising issues only under section 212(h). After initially seeking an extension of time in which to file a brief, his counsel failed to file one, and the BIA issued a summary dismissal of his appeal on February 11, 1998, pursuant to 8 C.F.R. S 3.1(d)(1-a)(i)(E) (1997). On March 9, 1998, represented by new counsel, Catney petitioned this Court for review of the BIA decision.6

II. Discussion

A. Catney's Claims

Catney raises three primary issues in his petition for review: (1) that section 440(d) of AEDPA should not be applied in cases such as his that were pending on AEDPA's enactment date; (2) that section 440(d) violates the equal protection component of the Fifth Amendment by irrationally distinguishing between PRAs facing deportation and PRAs facing exclusion; and (3) that section 348(a) of IIRIRA violates equal protection by irrationally denying relief from deportation to PRAs who have committed an aggravated felony since their lawful admission to the country, while affording the opportunity for such relief to aliens who have committed an aggravated felony since their unlawful admission.7

Catney's first claim arises from the Attorney General's determination that AEDPA section 440(d), which forecloses

_____

6. On May 11, 1998, Catney also filed, through his new counsel, a motion to the BIA seeking to reopen his case and to stay his deportation. This motion remains pending before the BIA.

7. See In re Michel, Int. Dec. 3335, 18 Immigr. Case Rep. (MB) B1-108, -111 (BIA Jan. 30, 1998) (en banc) ("We find that the language of the amendment to section 212(h) of the Act provides plainly that the aggravated felony bar to eligibility for relief applies only to an alien who
has previously been admitted to the United States for lawful permanent residence.").

8

criminal aliens such as Catney from obtaining section
212(c) relief, should be applied to cases pending on
AEDPA's enactment date. We have recently held differently
in Sandoval, 166 F.3d at 242, although, as we discuss
below, Catney may obtain the benefit of our ruling, if at all,
only through the filing of a habeas petition. Catney's second
claim is based on the elimination of discretionary relief
from deportation for criminal aliens under amended section
212(c), without a concomitant elimination of discretionary
relief from exclusion for criminal aliens. See supra note 4.
Catney argues that this distinction fails rational basis
review and violates the equal protection component of the
Fifth Amendment because there is no rational justification
for Congress to afford criminal aliens outside of the country
more generous treatment than it does those like him who
remain in the country.

For his third claim, Catney likewise argues that the
distinction drawn by Congress violates equal protection.
Under the IIRIRA amendment to section 212(h), aggravated
felons who are lawful residents are ineligible for the family
hardship waiver from deportation, while aggravated felons
who arrived in this country illegally remain eligible for the
waiver. Catney argues with some force that there is nothing
rational about a law that favors those who have committed
at least two crimes--illegal entry to this country and then
an aggravated felony--over those who have committed only
one--an aggravated felony, following lawful admission to
the country.

As noted, the government contends that Catney has
waived these issues by not briefing them before the BIA and
by failing to raise the section 440(d) issues in his notice of
appeal to the BIA. It also contests Catney's substantive
arguments regarding the retrospective application of section
440(d) and the constitutionality of the two provisions
discussed above.

B. Jurisdiction

We retain jurisdiction to adjudicate statutory or
constitutional claims such as those raised by Catney, as
well as to review denials of relief from deportation, in the

9

case of most aliens other than criminal aliens. See 8 U.S.C. S 1252(a)(1) (Supp. II 1996) (providing for judicial review of final order of removal in the courts of appeals); id. S 1252(b)(4) (outlining the scope and standard of judicial review of a final order of removal); id. S 1252(b)(9) (providing that judicial review of all factual and legal questions, "including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section"). However, following passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien such as Catney. See id. S 1252(a)(2)(C); Morel v. INS, 144 F.3d 248, 252 (3d Cir. 1998). Further, we conclude that any challenge by a criminal alien to the BIA's interpretation of the immigration laws or to the constitutionality of these laws must be made through a habeas petition.[8] Therefore, we decline to reach the substantive issues raised by Catney or the government's waiver arguments.

Although it may have been unclear following passage of AEDPA and IIRIRA whether a criminal alien such as Catney could raise statutory or constitutional issues in a petition for review of a deportation order, Sandoval has resolved this issue for cases arising in our circuit. Sandoval was a consolidated appeal that included both a petition for review of a BIA order and an appeal from a district court order granting the petitioner habeas relief. We concluded that habeas jurisdiction survived AEDPA's and IIRIRA's limitations on judicial review of certain deportation orders, but that direct review did not. See Sandoval, 166 F.3d at

_____

8. A circuit split on this issue currently exists. Compare LaGuerre v. Reno, 164 F.3d 1035 (7th Cir. 1998) (habeas relief is no longer available to criminal aliens facing deportation, but constitutional claims may be raised on direct review in court of appeals), and Richardson v. Reno, 162 F.3d 1338 (11th Cir. 1998) (habeas relief is no longer available), petition
for cert. filed, 67 U.S.L.W. 3561 (U.S. Feb. 23, 1999) (No. 98-1361), with Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998) (habeas relief remains available), cert. denied, 119 S. Ct. 1140 (1999), Henderson v. INS, 157 F.3d 106 (2d Cir. 1998) (same), cert. denied, 119 S. Ct. 1141 (1999), and Sandoval, 166 F.3d at 238 (same).

231–38. We noted "that this reading [of the statutes] comports with our obligation to read statutes to avoid serious constitutional problems, such as those we would face were IIRIRA read to take away habeas jurisdiction as well as [direct] review." Id. at 237. We concluded our discussion of the jurisdiction issue as follows:

> Recognizing that its interpretation [i.e., that AEDPA and IIRIRA preclude habeas review] might lead to just such a constitutional dilemma, the government contends that under the 1996 amendments there is jurisdiction in the courts of appeals to entertain claims of "substantial constitutional error" by aliens in Sandoval's position. This argument must fail because of the absence of any support, either in the statute or in the legislative history. The government's briefs cite no provision of AEDPA or IIRIRA that supports its reading and it conceded at oral argument that there is no specific provision granting us jurisdiction over substantial constitutional claims. Although the government's argument would have more force if there were a constitutional imperative to read the 1996 statutes in that manner, our conclusion that the statutes have left habeas jurisdiction intact in the district courts removes any such imperative.

Id. at 237–38 (emphases added).

Even following Sandoval, our jurisdiction to hear claims of "substantial constitutional error" on petitions for review of BIA orders was somewhat unclear. See, e.g. , id. at 238 n.6 ("Because of our conclusion that [habeas jurisdiction] covers statutory, as well as constitutional claims, we need not decide whether the claimed existence of jurisdiction in the courts of appeals to review substantial constitutional claims, but not statutory claims, would be an adequate alternative."). Indeed, at different times, each of the parties (Catney and the INS) took the position that jurisdiction was present, and then that it was lacking, even over Catney's claims of constitutional error. See, e.g., Pet'r Br. at 13–16; Pet'r Mot. to Defer Arg. at 1–2; INS Suppl. Mem. at 1; Statement of INS Counsel at Oral Arg. We are now satisfied that under the jurisprudence of this Court, following passage of AEDPA and IIRIRA, we have no jurisdiction to

11

review criminal aliens' final orders of removal, including such aliens' claims of statutory or constitutional error. See Sandoval, 166 F.3d at 237-38. Thus, lacking jurisdiction to entertain Catney's constitutional challenges to AEDPA and IIRIRA, or to adjudicate his claim that the BIA has incorrectly applied section 440(d) of AEDPA to his case, the Petition for Review will be dismissed.9

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

9. Catney also filed a motion for a stay of deportation pending judicial review of the order of deportation. Because we conclude that we have no jurisdiction to review the deportation order, Catney's motion for a stay of
that order will be denied as moot.

12