

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2004

# Mane v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3992

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Mane v. Atty Gen USA" (2004). *2004 Decisions*. Paper 1113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3992
_____

MALAM MANE; SAMIR MANE,

_____Petitioners,

v.

JOHN ASHCROFT,
Attorney General of the United States,
Respondent.

_____

On Petition for Review of Orders of Removal
from the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA Nos. A72-436-024 & A72-436-029)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 12, 2003
_____

Before: AMBRO, FUENTES, and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed:   January 6, 2004)
_____

OPINION
_____

Garth, Circuit Judge:

Petitioners Malam Mane, a native and citizen of Guinea-Bissau, and his son, Samir Mane, a native of Algeria and citizen of Guinea-Bissau, challenge a final order from the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture. Because Samir Mane's asylum application is derivative of his father's application, *see* 8 U.S.C. § 1158(b)(3), we will use "Mane" to refer to Malam Mane. We have jurisdiction under 8 U.S.C. § 1252. We will deny the petition for review.

## I.

Because we write exclusively for the benefit of the parties, we will recite only those facts relevant to the issues before us. For most of his career, Mane served as a driver for foreign ambassadors of the West African nation of Guinea-Bissau. Beginning in the late 1970's, this career path took Mane first to Sweden, then to Algeria, and finally to the United States of America in 1987, where he drove and protected Guinea-Bissau's ambassador to the United Nations ("UN") in New York City.

Sometime in 1990, the government of Guinea-Bissau stopped paying Mane his regular salary and rent subsidy. This seems to have been part of a larger fiscal crisis affecting civil servants of the Guinea-Bissau government. In December of 1990, Mane informed the ambassador to the UN that he wished to resign because he was "not happy with the situation," but the ambassador informed Mane that he could not resign and that

he "would send a report to the minister of foreign affairs of Guinea-Bissau." (Administrative Record ("AR") at 165.)

Although Mane believes the ambassador followed through on his threat and sent a "bad report," Mane never saw the report and freely acknowledged at his asylum hearing that he never learned of its contents. The administrative record does contain, however, a letter from the ambassador to the Guinea-Bissau government emphasizing "the desperation of the situation (due to the non receiving of transfers and consequently the non payment of salaries)" and explaining that the "situation has emptied in considerable form the good will of my most dedicated, dynamic, competent and creative collaborators." (AR at 242-43.) The ambassador also noted in his letter that he had "just received one more request for dismissal, this time from our fellow comrade Malan MANE, whom the situation and his family responsibilities have obligated him to do so." (*Id.* at 243.)

According to Mane's testimony, the ambassador received orders in late December 1990 from Guinea-Bissau to have Mane and his family "returned to Bissau at once." (AR at 166-67; 237.) Mane testified that he was afraid to return to Guinea-Bissau because he did not know the contents of the ambassador's report and the government might look disfavorably on a civil servant who resigned overseas.

The order to return to Guinea-Bissau notwithstanding, Mane remained in his position with the mission in New York for nearly two more years even though the salary

problem was not rectified. During that period, Mane returned to Guinea-Bissau for a one-month vacation and traveled to Canada for several days on business. It was also during this period that Mane signed his first application for asylum and withholding of removal. In October 1992, Mane finally resigned due to the continued nonpayment of his salary and subsidies.

In March 1998, Mane submitted a second application for political asylum and withholding of removal. That application stated that Mane feared he would be considered an "enemy of the state" because he had not returned to Guinea-Bissau when ordered to do so in 1991. (AR at 281.) In support of his application, Mane submitted an affidavit from Demba Balde, whom he had met in 1991 when he helped Balde obtain some business documents. Balde states in his affidavit that Mane explained his situation to him in 1991-92 and that "[t]hereafter, through contacts at the Mission, [Balde] learned that there was a warrant for Mr. Mane's arrest the moment he set foot in Guinea Bissau because he had refused to repatriate when he was ordered to." (AR at 240-41.)

When asked at his asylum hearing in December of 1999 if he was still afraid to return to Guinea-Bissau, Mane answered in the affirmative, explaining that a recent coup d'etat had brought the military to power in Guinea-Bissau and "[t]hey could think -- not really trust me or -- and they might do any -- anything that might -- that the [sic] decide or that they think is right to do." (AR at 172.)

-3-

## II.

At the conclusion of the asylum hearing, the Immigration Judge ("IJ") denied Mane's application and that of his son, Samir Mane. In doing so, the IJ held that resigning from a government job over non-payment of salary is not an expression of political opinion and therefore Mane was not statutorily eligible for asylum or withholding of removal. The IJ further found that even if Mane's resignation was an expression of political opinion, he was not entitled to asylum because his story was not credible. The IJ found it incongruous, for example, that Mane said he feared persecution by the government of Guinea-Bissau after informing the ambassador in 1990 that he wished to resign, and yet thereafter (i) continued to work at the mission for nearly two years, (ii) traveled to Canada and (iii) returned to Guinea-Bissau on vacation without incident. The IJ also found that Mane's claim that the ambassador sent a "bad report" to Guinea-Bissau was contradicted by the letter from the ambassador in the record, which the IJ characterized as "sympathetic" to Mane's plight. The IJ found that Balde's affidavit was "utterly worthless" because it was unclear who Balde was, the affidavit was based largely on statements Mane had made to Balde, and Balde's assertion that there was a warrant for Mane's arrest was "absurd." (AR at 119.)

The IJ confessed that he had trouble understanding why Mane would be at risk in Guinea-Bissau. The IJ believed that Mane, "because of his many contacts and his great and vast experience and probably good reputation, would be of value to any

administration in Guinea-Bissau." (AR at 120.) The IJ thus found there "was no evidence of possible future persecution, assuming even if [Mane] qualified for asylum." (*Id.*) Because withholding of removal is an even higher standard than asylum, the IJ denied that request for relief also.

As to Mane's request for protection under the Convention Against Torture, the IJ found that Mane failed to meet his burden of proving that it was more likely than not that he would be tortured if forced to return to Guinea-Bissau. The IJ based his decision on his adverse credibility determination and because there was no evidence that a former diplomatic individual working for many embassies would be at risk of torture.

The IJ thus denied Mane's application and that of his son. The IJ did, however, grant their request for voluntary departure.

The BIA affirmed the IJ's decision without opinion on October 4, 2002. Mane and his son filed a timely petition for review of the BIA's decision on October 29, 2002.[1]

### III.

Under the governing law, we must ascertain whether the BIA's factual determinations are supported by substantial evidence. *Senathirajah v. INS,* 157 F.3d 210,

---

[1] While their petition was pending, Mane and his son filed a motion seeking a stay of removal pending a ruling from our Court. Although we denied the motion -- thus making it likely that Mane is no longer on U.S. soil -- his possible removal does not render the petition moot. *See Chong v. Quarantillo,* 264 F.3d 378, 385 (3d Cir. 2001) (holding that BIA's "order of removal creates sufficient collateral consequences to render [an alien's] petition a live case or controversy by preventing [the alien] from entering the United States for ten years" pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii)).

216 (3d Cir. 1998). We may decline to uphold the BIA's findings only if the evidence compels a contrary conclusion. *INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992). We defer to the BIA's interpretation of the Immigration and Nationality Act ("INA") unless the interpretation is "'arbitrary, capricious, or manifestly contrary to the statute.'" *Katsis v. INS,* 997 F.2d 1067, 1070 (3d Cir. 1993) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984)). Although we normally review only BIA decisions, where, as here, the BIA summarily affirms the IJ's decision without a written opinion, we review the decision of the IJ. *See Tarrawally v. Ashcroft,* 338 F.3d 180, 184 (3d Cir. 2003).

Section 208(b) of the INA, 8 U.S.C. § 1158(b), provides that the Attorney General has discretion to grant asylum to refugees. The INA defines a refugee as a person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of establishing that he falls within this definition. 8 C.F.R. § 208.13(a) (2003). Establishing eligibility for withholding of removal requires a showing of a "clear probability of persecution," a higher standard than that for asylum. *Li Wu Lin v. INS,* 238 F.3d 239, 244 (3d Cir. 2001).

To qualify for relief under the United Nations Convention Against Torture, and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23

-6-

I.L.M. 1027 (1984), an applicant must prove that he is more likely than not to be tortured in the country of removal. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 591 n.2 (3d Cir. 2003) (citing 8 C.F.R. §§ 208.16(c)(2) & (4)).

**IV.**

After carefully reviewing the administrative record, we find that Mane has failed to demonstrate that "any reasonable adjudicator would be compelled to conclude" that he was entitled to political asylum, withholding of removal, or protection under the Convention Against Torture. 8 U.S.C. § 1252(b)(4)(B). As a preliminary matter, we agree with the IJ that Mane did not establish that he was statutorily eligible for asylum. Although an expression of "political opinion," as that phrase is used in the INA, can encompass a wide range of politically-motivated acts, Mane's 1992 resignation is not one of them. That is not to say that resigning a government position might not, under certain circumstances, constitute an expression of political opinion. Mane, however, resigned solely for financial reasons (i.e., continued non-payment of salary and subsidies), not because he wished to make a political statement. *Cf. Elias-Zacarias,* 502 U.S. at 481-82 (holding that guerilla organization's attempt to conscript asylum applicant into its military forces did not constitute persecution on account of political opinion where the record failed to show a political motive on applicant's part).

It is true that in his first asylum application Mane stated that he feared persecution in Guinea-Bissau because he had "spoken out, discreetly, against what [was] happening"

and "people who [had] worked for the gov't [were] being killed because of the political changes that are occurring." (AR at 275.) Such statements, if true, would constitute fear of persecution on account of political opinion. Mane admitted, however, at his asylum hearing that those statements were not true. (AR at 195-96.)

Mane argues on appeal that the IJ failed to take into account the fact that the military had assumed power in Guinea-Bissau since his resignation, that the new government might look disfavorably on individuals who worked for the former regime, and that such disfavorable treatment would constitute persecution on account of political opinion. Even if such persecution made Mane statutorily eligible for asylum, the IJ nevertheless believed that Mane "would be of value to any administration in Guinea-Bissau" because of his many contacts, vast experience, and good reputation. (AR at 120.) We also note that, although the military came to power through a bloody rebellion, the record does not compel a finding that the military continued, after assuming power, to target civilians who were associated with the prior government, let alone low-level civil servants who had resigned years earlier.

We also find that there is substantial evidence in the record supporting the IJ's determination that, even if Mane were statutorily eligible, he was not entitled to asylum because his story was not entirely credible. If an immigration judge finds that a witness's testimony lacks credibility, he or she should "offer a specific, cogent reason for [his or her] disbelief." *Senathirajah,* 157 F.3d at 216 (internal quotation marks and citation

omitted). Accordingly, we review the proffered "reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." *Id.* (internal quotation marks and citation omitted). In this case, the IJ provided cogent reasons for his adverse credibility finding. We agree, for example, that it is incongruous that: (i) Mane was allowed to continue working at the Mission for nearly two years after the ambassador allegedly received orders "to have [Mane] and his family returned to [Guinea] Bissau at once" (AR at 237); (ii) Mane vacationed in Guinea-Bissau without incident *after* he had expressed his desire to resign; and (iii) the only letter in the record from the ambassador in New York -- the very individual who allegedly sent the so-called "bad report" to the Guinea-Bissau government -- sympathizes with the "desperate financial situation" in which the unpaid civil servants found themselves and makes no negative remarks about Mane. (AR at 242-43.) We also note that Mane took the vacation to Guinea-Bissau *after* he signed his first application for political asylum, which strongly undermines his claim that he feared at the time that he would be persecuted by the government if forced to return to Guinea-Bissau.

Mane mentions in the "Statement of Issues" and "Summary of Argument" sections of his brief that the BIA abused its discretion by affirming the IJ "without opinion." We find that he waived this argument by failing to develop it in the body of his brief. *See Reynolds v. Wagner,* 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . will be deemed waived."). Moreover, we recently

rejected a similar attack on the BIA's streamlining regulations. *See Dia v. Ashcroft, ---*

F.3d --- (3d Cir. 2003) (en banc) (holding, among other things, that BIA's streamlining

regulations are not inconsistent with INA or violative of due process).

Accordingly, we will DENY the petition for review of the BIA's decision.

TO THE CLERK OF THE COURT:

Please file the foregoing opinion.

/s/ Leonard I. Garth
Circuit Judge